299 F.Supp. 572 (1969)
SWEETARTS, an Oregon corporation, Plaintiff,
v.
SUNLINE, INC., a Missouri corporation, and Menlo F. Smith, Defendants.
No. 64 C 226(2).
United States District Court E. D. Missouri, E. D.
March 27, 1969.
*573 John D. Pope, III, St. Louis, Mo., for plaintiff.
Ralph W. Kalish, St. Louis, Mo., for defendants.

MEMORANDUM
MEREDITH, District Judge.
Sweetarts, an Oregon corporation, filed suit against Sunline, Inc., a Missouri corporation, and Menlo F. Smith, an individual, alleging that the defendants' use of "SweeTarts" on candy violated the plaintiff's trademark. This Court held, in a decision reported at 255 F.Supp. 771, that the plaintiff's trademark registration for use on dried prunes was invalid for lack of use, and that there was no unfair competition or common-law trademark infringement because there was no likelihood of confusion and the defendants had adopted the mark in good faith.
The Court of Appeals for the Eighth Circuit, in a decision reported at 380 F.2d 923, reversed on appeal and held that as a matter of law there was likelihood of confusion and that the defendants' use of "SweeTarts" infringed upon the plaintiff's common-law trademark. That Court determined that the plaintiff was not entitled to nationwide protection because of this Court's finding that the defendants adopted the mark in good faith. The Court of Appeals held that the record clearly established that the plaintiff was entitled to protection in the States of Washington, Oregon, and California. The cause was remanded to this Court with instruction for it to determine "the effective market area of plaintiff" and to grant plaintiff an injunction protecting its trademark rights within that area.
*574 This Court, on September 8, 1967, issued an order enjoining and restraining the defendants, effective January 1, 1968, from using the name "SWEETARTS" or any name confusingly similar thereto, and ordering them to remove all existing stocks of candy bearing that trademark that did not originate with the plaintiff. The effective date of the order was changed to March 1, 1968, by an order of the Court entered December 11, 1967. A motion to dissolve the injunction was heard and denied on January 16, 1968. A hearing was held on January 16, 1968, to determine the extent of the plaintiff's market area. The plaintiff made a motion on March 21, 1968, for an order to show cause why defendants should not be held in contempt for violating the Court's injunction of September 8, 1967. An order to show cause was issued and a hearing was held on April 4, 1968. The plaintiff alleged that the injunction had been violated in that (1) the defendants had candy bearing the trademark "SWEETARTS" on the market for sale in California, Oregon, and Washington, after March 1, 1968, and (2) the defendants were advertising and selling candy with a confusingly similar trademark, "Spree Tarts", in these three states after the effective date of the order.
This matter is before the Court at this time for a determination as to the area in which the plaintiff is entitled to protection of its trademark, and for a determination as to whether or not the defendants' conduct in the above allegations violated the injunction of September 8, 1967.

Extent of Market Area
The Court of Appeals has determined that the plaintiff is entitled to protection in California, Oregon, and Washington. The plaintiff, while contending that it is entitled to protection in any state in which it ever sold any candy under its trademark, actually seeks protection in those states which the Court of Appeals noted that it did more than "de minimus" business, i. e., Florida, Idaho, Illinois, Indiana, Kansas, Montana, Nebraska, New York, Pennsylvania, and Wyoming. Those states considered "de minimus" by the Eighth Circuit all had total sales from 1947 through May 12, 1965, of less than $75.00.
The plaintiff's sales in the states under consideration are broken down in the following table:

 7-1-47- Dec. 31,
 6-30-62 1962 1963 1964 1965 1966 1967
 --------- ------ ------ ------ ------ ------ --------
 Cal.[*] 104,584 38,050 36,166 32,109 24,925 21,534 11,241
 Fla. 2,492 0 0 43 111 116 93
 Ida. 17,487 1,387 1,134 1,876 1,021 1,005 905
 Ill. 23,458 669 555 351 368 378 384
 Ind. 321 454 151 151 151 151 0
 Kan. 5,713 503 711 422 567 151 0
 Mont. 19,649 151 0 321 340 340 397
 Neb. 471 622 921 0 1,058 302 662
 N. Y. 5,054 447 460 404 221 504 334
 Pa. 2,707 1,202 1,029 1,273 1,125 793 1,601
 Wyo. 0 189 0 1,096 0 0 0

*575 The marketing technique of the plaintiff was discussed in this Court's original opinion in this matter and will not be set forth here a second time. On the issue of future growth of the plaintiff's sales, evidence was introduced which showed that the plaintiff had been placed on an approved list by the national YMCA in May of 1967. This list is sent to all local YMCA's in the United States by the national organization. The plaintiff has begun soliciting orders from those organizations in the States of Oregon, Washington, Idaho, Montana, Wyoming, Kansas, and Colorado, and intends to do so over the entire United States. The plaintiff also displayed its candy at an International Convention of Job's Daughters in August of 1967.
The defendants entered the depositions of four persons who were customers of the plaintiff. The deposition of Steven L. Reggio, a partner in the Steven Reggio Company of New York City, was taken. His company has been purchasing the plaintiff's candy at Chrismas time for twenty years, and sending it to its customers. He was asked what kind of reaction was received from the customers to whom "SweeTarts" were given, and replied, "Most favorable. In fact, many of them ask for the address and say they want to purchase it for their own use." The customers referred to the candy by name, "SweeTarts". Mr. Eugene A. Reggio, brother of Steven Reggio, testified to the same customer reaction, and that he would be asked whether it was time to receive it again. The following candy was ordered from the plaintiff by the Steven Reggio Company:

 1959 324 boxes (14 oz.)
 1963 336 boxes (14 oz.)
 1964 288 boxes (14 oz.)
 1965 162 boxes (14 oz.)
 1966 354 boxes (14 oz.)

The deposition of Fred R. LaForce was taken in Philadelphia, Pennsylvania. He was introduced to "SweeTarts" in 1945 when he worked for the Chicago Eyeshield Company in Chicago, which company sent "SweeTarts" to its customers. He organized the Guardian Equipment Company in Philadelphia, and has been sending two hundred to three hundred two-pound boxes of "SweeTarts" to his customers for eighteen years. He also noted that a lot of customers ask for the address of "SweeTarts", so they may order for themselves. He also said that he gets about one hundred letters back each year thanking him for the candy, "which is a high response for that type of thing." The deposition of Robert Malcom, Jr., was taken in St. Petersburg, Florida. He used to be the president of Cesco Safety Products, Inc., of Chicago, Illinois. That company also purchased "SweeTarts" for its customers at Christmas each year. Mr. Malcom testified that the purchasing of "SweeTarts" mushroomed and people in the plant wanted to buy them, then other employees and their friends. The company ordered "SweeTarts" for them and sold them for cost. He said that the principals to whom they were sending the "SweeTarts" as gifts began to have his company order "SweeTarts" for them to send to their customers. The company "felt funny" acting as a middleman, and finally decided it was foolish to send as a gift something which an individual was buying himself to give to others. The Cesco Company stopped buying "SweeTarts" and started giving something else as gifts.
The Court of Appeals directed this Court to weigh all the factors in determining the plaintiff's effective market area, including:
(1) The plaintiff's dollar value of sale at the time the defendant entered the market;

*576 (2) The number of plaintiff's customers as compared to the population of the state;
(3) The relative and potential growth of plaintiff's sales; and
(4) The length of time since significant sales.
The Court of Appeals said that the market penetration need not be large to entitle the plaintiff to protection in a given area, citing Sweet Sixteen Co. v. Sweet "16" Shop, 15 F.2d 920 (8th Cir. 1926). The Court in that case said:
"In case of a technical trade-mark as here dealt with, while there must, of course, be some user in trade in the disputed field of trade, the quantum thereof need not be large."
The Court also cited Kathreiner's Malzkaffee Fab. v. Pastor Kneipp Medicine Co., 82 F. 321 at 326:
"It is enough, we think, if the article with the adopted brand upon it is actually a vendible article in the market, with intent by the proprietor to continue its production and sale. It is not essential that its use has been long continued, or that the article should be widely known, or should have attained great reputation."
The Court in its reversing opinion stated that the difference between the marketing techniques of the plaintiff and of the defendants was not controlling. However, the Court notes in its remand that the market penetration of the plaintiff "must be significant enough to pose the real likelihood of confusion among the consumers in that area between the products of plaintiff and the products of defendants."
The United States Supreme Court in the case of United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), in discussing the creation of a property right in a trademark, and the function a trademark was intended to serve, said:
"There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. * * * the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will * * *."
The Court in the United Drug Co. case, supra, at 96, 39 S.Ct. 48, indicates that sporadic sales in a given state would not be sufficient use to create a property right in a trademark in that area. The Second Circuit held that a "merely experimental" use of a trademark in a given area did not create a property right which would be protected against a subsequent user. Brower v. Boulton, 58 F. 888 (2d Cir. 1893) (sale of 220 barrels of flour to Venezuela in 1873 followed by eleven years of non useheld to be "so transient and inconsiderable as to suggest that it was merely experimental").
The plaintiff has had consistent sales for years in all of the states under consideration, with the exception of Wyoming and Florida. The plaintiff's dollar value of sales in each state is obviously not great. The sales in all of these states account for approximately five percent of the plaintiff's total yearly sales. The volume of sales has been consistent over the entire period. There is no evidence that the volume of sales will greatly increase in the foreseeable future. The Court of Appeals directed this Court to consider, as one of the factors, the number of customers which the plaintiff had to the population of the state. The plaintiff's sales in these states are limited to a few customers. However, these customers are not the actual consumers of the plaintiff's product. The "SweeTarts" are either given as gifts or sold by organizations like Job's Daughters. However, taking New York as an example, the sale of three hundred boxes of candy in a state with a population of approximately seventeen million people is not substantial. The Eighth Circuit did not intend, by setting out the comparison of customers to population as a factor, to make the test of market penetration one of substantial percentage of sales in a given area. To do so would mean that *577 any small business which had developed a quality product and reputation could protect its trademark only in those states in which it could compete for substantial sales. The applicable law is that enunciated by the Eighth Circuit in Sweet Sixteen Co. v. Sweet "16" Shop, quoted supra.
The plaintiff's product is a vendible article in the market, and plaintiff intends to continue the production and sale of "SweeTarts". It is clear that the plaintiff has established a reputation for fine candy among its consumers. This appreciation for the plaintiff's product has been made known to the actual purchasers, and this has, no doubt, caused them to continue buying and giving "SweeTarts". The reputation of "SweeTarts" has also expanded the plaintiff's sales, as seen from the deposition of Robert Malcom. The plaintiff has had significant sales over an extended period of time in all of the states under consideration, with the exception of Wyoming and Florida. The plaintiff's market penetration is of such a nature as to create a "real likelihood of confusion" among consumers in these states between the source of the defendants' products and the source of the plaintiff's product. The sales in Wyoming were in two years and none since 1964. The sales in Florida were not consistent or significant prior to the defendants' entry into the market in 1964.
Accordingly, this Court will extend the area in which the plaintiff is entitled to protection of its trademark to include the following states (as well as the States of California, Oregon, and Washington): Idaho, Illinois, Indiana, Kansas, Montana, Nebraska, New York, and Pennsylvania.

Sale of Sweetarts After March 1
Paragraph two of the injunction entered by this Court on September 8, 1967, provided that the "[d]efendants shall on or before January 1, 1968, remove all existing stocks of candy which did not originate with plaintiff and which bear the trademark SWEETARTS from retail distributors, wholesale distributors, and jobbers, in the States of Washington, Oregon and California * * *" The effective date of the injunction was extended to March 1, 1968, by order entered on December 11, 1967.
The evidence shows clearly that the defendants' "SweeTarts" were being sold by retail stores in California, Oregon, and Washington, after March 1, 1968. The evidence also shows that the defendants did a very thorough job in removing its "SweeTarts" stock from the hands of brokers and jobbers prior to March 1, 1968. No effort was made by the defendants to remove its product "SweeTarts" from the retail market.
A hearing was held on September 8, 1967, to determine the nature of the order to be entered by this Court relative to the States of California, Oregon, and Washington. The defendant Menlo F. Smith testified that it would take approximately four months to accomplish a change of name, and that Sunline had approximately seven hundred wholesale accounts and forty thousand possible retail outlets in these three states. On December 11, 1967, the effective date of the order was changed to March 1, 1968. The defendant Sunline discontinued all shipments of its "SweeTarts" to the States of California, Oregon, and Washington, after January 28, 1968. Only "Spree Tarts" were shipped to these states after February 1, 1968. The jobbers were instructed to return to Sunline all "SweeTarts" which they had on hand February 15, 1968. The defendant Menlo F. Smith testified that a box of Sunline "SweeTarts" would sell from the retail counter in two days to a week depending upon the size of the store.
The injunction was issued in this case to protect the plaintiff's trademark and good will. It has been held many times that failure to see that an injunction is precisely obeyed is contempt. It is also proper, however, to consider whether a good faith attempt was made to comply with the terms of the injunction. The defendants here were *578 originally granted four months to accomplish their prescribed task. They were aware of the number of retail outlets and of the Court directive. A sixty-day extension was granted on the original effective date. No application was made to the Court to extend the time in which the defendants' "SweeTarts" could be on the market. The defendants waited until two weeks before their candy "SweeTarts" was to be off the retail market to cut off the supply at the wholesale source. This was the only "effort" made to "remove" its product from the retail market. Apparently they did not even attempt to have the jobbers trade "Spree Tarts" for the "SweeTarts" when an account was serviced. Many stores were selling "SweeTarts" and "Spree Tarts" after March 1st. The defendants did not make a good faith attempt to comply with paragraph two of the Court's order, and will be found in contempt for failure to remove Sunline "SweeTarts" from the retail market "on or before March 1, 1968."

Name Change to "Spree Tarts"
The order entered on September 8, 1967, enjoined the defendants, in paragraph 1(a),
"from using the word SWEETARTS or any name or word or words or representation confusingly similar thereto in connection with the advertising, sale, or offering for sale of candy or confections or any other similar or related food products which do not originate with plaintiff * * *"
It is admitted by the defendants that they changed the name of their candy product in the States of California, Oregon, and Washington to "Spree Tarts" and that it is presently being sold in those states.
The defendant, Sunline, Inc., registered the name "Spree" as a trademark on April 25, 1967. The registration issued by the United States Patent Office notes that "Spree" was first used in January of 1966. The trademark "Spree Tarts" appears on the defendants' candy and advertising material in three forms: (1) "Spree Tarts", with "Spree" written in script with a capital "S", and "Tarts" in block letters with a capital "T"; (2) "SPREETARTS" with all capital block letters; and (3) "Spreetarts" with only the first "S" capitalized.
The function of a trademark is to point out the origin of the article to which it is attached; to identify the producer. Tillman & Bendel v. California Packing Corp., 63 F.2d 498 (9th Cir. 1933), citing Del. & H. Canal Co. v. Clark, 80 U.S. 311, 20 L.Ed. 581 (1872). The courts will enjoin not only the use of an identical name, but also the use of a tradename that so closely resembles the plaintiff's that it is confusingly similar, and likely to mislead the ordinary purchaser (buying with ordinary caution) as to the source of the goods to which it is attached. See American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317 (1926); McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828 (1878); David Sherman Corp. v. Heublein, Inc., 340 F.2d 377 (8th Cir. 1965).
Whether a tradename is confusingly similar to the plaintiff's depends upon a consideration of the similarity of sound, as well as the appearance of the words or letters. David Sherman Corp. v. Heublein, Inc., supra; Esso, Inc. v. Standard Oil Co., 98 F.2d 1 (8th Cir. 1938). The Restatement of Torts, § 729, lists the following factors which should be considered in determining whether one name is confusingly similar to another:
(a) the degree of similarity * * * in:
 (i) appearance;
 (ii) pronunciation * * *;
 (iii) verbal translation * * *;
 (iv) suggestion;
(b) the intent of the actor in adopting the designation;
(c) the relation in use and manner of marketing * * *;
(d) the degree of care likely to be exercised by the purchasers.
*579 A list of various names held to be confusingly similar may be found in David Sherman Corp. v. Heublein, Inc., supra.
The Eighth Circuit in its opinion in this matter has found that the plaintiff's name "SweeTarts" is uncommon, arbitrary, and distinct. It also determined that the plaintiff and the defendants were both applying the name to the same general class of products, that is, candy. The Court of Appeals held that the difference in marketing technique was not controlling, and that the price of the plaintiff's goods and the defendants' goods were competitive, both were candy, and both ultimately purchased by the same class of persons.
When all of the above factors are considered, the only conclusion possible is that the defendants' use of "Spree Tarts", "SPREETARTS", or "Spreetarts", is confusingly similar to plaintiff's "SweeTarts". The only differences between the plaintiff's name and the name now attempted to be used by the defendants are the exchange of "Spr" for "Sw", and the writing (in one of its forms) of the first one-half of the name in script rather than block letters and having a short break before adding the second half of the tradename. The sounds of "Spr" and "Sw" are extremely difficult to distinguish between when used in the name "Spree Tarts" and "SweeTarts". When the names are spoken there is no break between "Spree" and "Tarts", but there is a continuous sound. As the Court of Appeals pointed out, each product is ultimately purchased by the same class of persons. The consumer using ordinary caution would not distinguish between the two names as applied to the same type of goods.
"Spree Tarts" is confusingly similar to the plaintiff's "SweeTarts" when the two are considered alone, absent the past history in this case. However, it should be pointed out that the defendants had been determined to be engaged in unfair competition by the use of "SweeTarts," and ordered to cease using the plaintiff's name in the manufacture and sale of candy. It had been ordered not to use "the word SWEETARTS or any name or word or words * * * confusingly similar thereto * * *" This requires that the defendants do more than merely see how close they can come to the plaintiff's name without crossing over the line.
"The due protection of trademark * * rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line even if that requirement involves a handicap as compared with those who have not disqualified themselves." Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353 (6th Cir. 1930). Also cited in Independent Nail & Pack. Co. v. Stronghold Screw Products, 215 F. 2d 434 (7th Cir. 1954); and Eskay Drugs v. Smith, Kline & French Laboratories, 188 F.2d 430 (5th Cir. 1951).

Damages
Judicial sanctions in a civil contempt proceeding may be employed for either or both of two purposes. First, to coerce the defendant into compliance with the Court's decree. Here the defendant's financial resources and the seriousness of the "levy" as a burden to him should be taken into consideration. Second, to compensate the complainant for loss which he has sustained. Here the award must be based upon evidence of actual loss sustained. United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). This latter category may properly include the complainant's attorney fees in investigating and prosecuting the contempt. Babee-Tenda Corp. v. Scharco Manufacturing Co., 156 F.Supp. 582 (S.D.N.Y.1957).
The plaintiff, while maintaining that its March 1968 sales were damaged by the defendants' failure to comply with the injunction issued by this Court, did not produce any convincing evidence as to loss of sales during March 1968 which were caused by the defendants' *580 contempt. The plaintiff's attorneys introduced affidavits which show that the cost of investigating and prosecuting the contempt was a total of $1,570 in attorney fees. Accordingly, the defendants will be ordered to pay to the plaintiff this amount as actual damages.
The defendants' contempt is composed of two offenses: first, there is the failure to remove "SweeTarts" by the prescribed deadline; second, there is the use of the confusingly similar "Spree Tarts", "Spreetarts", and "SPREETARTS". The steps taken by the defendants in an attempt to comply with the Court's order to remove their "SweeTarts" from the market in Washington, Oregon, and California are sufficient to warrant the belief that none of the defendants' "SweeTarts" are presently on the retail market in those states. A "judicial sanction" to insure compliance with this portion of the order would not be appropriate at this date.
The remaining question for consideration is the nature of the order which should be entered relative to the contempt by the use of a confusingly similar tradename. This tradename was adopted with full knowledge of the plaintiff's rights in its name, and of the Court's decree against use of a confusingly similar tradename in the enjoined area. These facts, on their face, would appear to warrant a "judicial sanction" in the form of a daily "fine" for such behavior from this date forward. The Court will assume, however, that the defendants are more fully aware of their legal duties and obligations at this juncture of the proceedings than they were previously. Accordingly, the Court will not, at this time, assess a "fine" to insure future compliance, but will assume that the defendants will act in the utmost good faith without delaying tactics. The Court will order that the defendants make no further sale or shipments of "Spree Tarts" and "SweeTarts" to brokers in the States of California, Oregon, Washington, Idaho, Illinois, Indiana, Kansas, Montana, Nebraska, New York, and Pennsylvania after April 1, 1969. The Court will not, however, require the defendants to remove from the retail market those items presently in the hands of retail sellers.
NOTES
[*] Population of these states are (1960 census):

 California 15,717,204
 Florida 4,951,560
 Idaho 667,191
 Illinois 10,081,158
 Indiana 4,662,498
 Kansas 2,178,611
 Montana 674,767
 Nebraska 1,411,330
 New York 16,782,304
 Pennsylvania 11,319,366
 Wyoming 330,066