**SWEETARTS, an Oregon Corporation,
Plaintiff-Appellee,**

v.

**SUNLINE, INC., a Missouri Corporation,
and Menlo F. Smith, Defendants-
Appellants (two cases).**

**Nos. 19760, 19766.**

United States Court of Appeals,
Eighth Circuit.

Jan. 20, 1971.

See also 423 F.2d 260.

J. Pierre Kolisch, Portland, Or., John D. Pope III, St. Louis, Mo., for Sweetarts; John W. Stuart, Portland, Or., of counsel.

Orville Richardson, Ralph W. Kalish, St. Louis, Mo., for Sunline, Inc., and another.

Before MATTHES, Chief Judge, and HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

These two appeals arise out of trademark infringement litigation which be-

gan in 1964. The appeal in No. 19760 presents the question of whether plaintiff Sweetarts, an Oregon candy manufacturer, has established sufficient market penetration in eight states through the distribution of candy products bearing its common-law technical trademark "SweeTarts" to entitle it to injunctive protection prohibiting the defendant, Sunline, Inc. (Sunline),[1] from using the same "SweeTarts" mark on the latter's candy products in those eight states. This court previously held that the extent of plaintiff's market penetration in ten states presented a factual question and remanded the matter to the district court with instructions to make that determination. Sweetarts v. Sunline, Inc., 380 F.2d 923 (8th Cir. 1967). On remand, the district court determined that eight of the ten states in question constituted part of the plaintiff's effective market area and enjoined Sunline from using the trademark "SweeTarts" on its candy products in those states. Sweetarts v. Sunline, Inc., 299 F.Supp. 572 (E. D.Mo.1969). Defendant Sunline prosecutes an appeal from the district court's award of injunctive relief to the plaintiff. For reasons stated below, we reverse.

In No. 19766, plaintiff Sweetarts appeals from the district court's refusal to order an accounting and to award the plaintiff damages, including additional attorney's fees, after the court found the defendants in civil contempt for using a confusingly similar trademark in three states already decreed by this court to be within the plaintiff's effective market area. The issues presented on the appeal by Sweetarts are completely separate from the questions raised by Sunline in No. 19760. The district court considered all of the issues raised on these two appeals in a single opinion. Sweetarts, supra, 299 F.Supp. 572.

We turn first to Sunline's appeal in No. 19760. This court and the district

court have adequately set out in prior opinions the material facts surrounding this litigation, and they need not be restated in great detail. Plaintiff Sweetarts originally commenced this action charging the defendants with unfair competition, common-law trademark infringement and infringement of plaintiff's registered trademark (for use in connection with dried prunes), and seeking to enjoin the defendants from any use of the trademark "SweeTarts". The district court ruled in favor of the defendants and dismissed the plaintiff's complaint. Sweetarts v. Sunline, Inc., 255 F.Supp. 771 (E.D.Mo.1966).

This court reversed that ruling on appeal and held that the trademark "SweeTarts" used by the plaintiff on its candy products constituted a valid common-law technical trademark. Sweetarts, supra, 380 F.2d 923. We determined that the plaintiff's market area included Washington, Oregon and California, those states in which the plaintiff had made approximately ninety-five per cent of its total sales. We reviewed testimony and evidence produced by the parties which disclosed that Sweetarts' average annual sales volume amounted to approximately $135,000. The aggregate sales volume in Washington, Oregon and California from July, 1947, to May, 1965, totaled $1,800,-000.

In our prior opinion, we sustained the district court's finding that the defendants had adopted their mark in good faith and thus denied plaintiff any relief in fifteen states where it had never recorded a sale and in eight additional states in which the record disclosed that the plaintiff's sales were "so small, sporadic, and inconsequential that present or anticipated market penetration is di minimus." 380 F.2d at 929. With respect to ten other states, Florida, Idaho, Illinois, Indiana, Kansas, Montana, Ne-

---

1. Menlo F. Smith, president of defendant Sunline, Inc., has been a named party throughout the litigation. The issues presented in these appeals, however, relate only to the corporate parties and their activities and Smith is, in effect, a nominal party here.

braska, New York, Pennsylvania and Wyoming, we said:

However, there remain a number of states in which plaintiff does or has done some measurable business. To what extent these areas are within plaintiff's effective market area, we believe presents a genuine factual issue. As the trial court did not make a finding upon plaintiff's market area, we believe the best course is to remand this case to the trial court so that it may hear the evidence and make the findings necessary to resolve this factual question. [380 F.2d at 929 (footnote omitted)]

In remanding the issue of the plaintiff's effective market area, we enunciated certain standards to guide the trial court in making its determination. This court specifically said:

In determining this issue the trial court should weigh all the factors including plaintiff's dollar value of sales at the time defendants entered the market, number of customers compared to the population of the state, relative and potential growth of sales, and length of time since significant sales. Though the market penetration need not be large to entitle plaintiff to protection, Sweet Sixteen Co. v. Sweet "16" Shop, 15 F.2d 920 (8 Cir.

1926), it must be significant enough to pose the real likelihood of confusion among the consumers in that area between the products of plaintiff and the products of defendants. [380 F.2d at 929]

Even though we directed that the trial court might hear additional evidence on remand, plaintiff Sweetarts offered no further evidence concerning the nature of its market penetration and the extent of consumer identification of its product. Plaintiff did introduce evidence of its efforts to increase its sales volume by obtaining authorization from the national YMCA organization to sell its candy through individual YMCA chapters. It offered no evidence as to the success of these efforts. The plaintiff also updated its sales data to include a sales tabulation through December 31, 1967, in each of the ten states in question for the period of time since termination of the prior litigation in the district court.[2] On the basis of this evidence, the district court concluded that all of the states in question, except Florida and Wyoming, constituted part of the plaintiff's effective market area and enjoined defendant Sunline from using the "SweeTarts" trademark on its candy sold in those eight states.

We turn now to the evidence of actual market penetration in the eight

2. The following table reflects the plaintiff's total sales volume in each of the states in question for each fiscal year from 1962 through the period ending December 31, 1967.

SALES (DOLLARS)

|  | 7–1–47–6–30–62 | Fiscal Year 1962 | Fiscal Year 1963 | Fiscal Year 1964 | Fiscal Year 1965 | Fiscal Year 1966 | Dec. 31, 1967 (6 mo.) |
|---|---|---|---|---|---|---|---|
| Fla. | 2,492 | 0 | 0 | 43 | 111 | 116 | 93 |
| Ida. | 17,487 | 1,387 | 1,134 | 1,876 | 1,021 | 1,005 | 905 |
| Ill. | 23,458 | 669 | 555 | 351 | 368 | 378 | 384 |
| Ind. | 321 | 454 | 151 | 151 | 151 | 151 | 0 |
| Kan. | 5,713 | 503 | 711 | 422 | 567 | 151 | 0 |
| Mont. | 19,649 | 151 | 0 | 321 | 340 | 340 | 397 |
| Neb. | 471 | 622 | 921 | 0 | 1,058 | 302 | 662 |
| N.Y. | 5,054 | 447 | 460 | 404 | 221 | 504 | 334 |
| Pa. | 2,707 | 1,202 | 1,029 | 1,273 | 1,125 | 793 | 1,601 |
| Wyo. | 0 | 189 | 0 | 1,096 | 0 | 0 | 0 |

states in question. Based on the figures available for the five fiscal years, 1962–1966, the plaintiff made its greatest market penetration in Idaho (population 667,191),[3] where its annual average sales amounted to approximately $1,285 over the five-year period. The plaintiff's sales in Idaho have been relatively stable over the years, but do not constitute effective market penetration in that state when analyzed under the four significant factors (volume, customers compared to population, potential growth of sales, time since significant sales) set forth in this court's prior opinion, *Sweetarts, supra*, 380 F.2d at 929. In the five most recent fiscal years, the plaintiff's sales in Idaho have ranged from a high of $1,876 in 1964 to a low of $1,005 in 1966. Such activity could hardly be characterized as reflecting a favorable growth potential for sales in that state and does not constitute a sales volume large enough to entitle the plaintiff to claim the entire state as its effective market area. The conclusion that Idaho does not fall within plaintiff's effective market area is further strengthened by a comparison of plaintiff's activity in that state with its business in Oregon, Washington and California. Sweetarts' total sales in Idaho from 1947 through 1963 amounted to $20,008. By comparison, the plaintiff sold $25,941 worth of candy in Washington in 1963 alone, and considerably more in the other two states that same year. Having considered the standards set forth in this court's prior opinion and other relevant factors, we conclude that the plaintiff's sales in Idaho are not significant enough to pose any real likelihood of confusion among consumers in that state.

We reach a similar conclusion with regard to the other seven states involved on this appeal and discuss each of them briefly. In Indiana (population 4,662,-498), the plaintiff's sales for the years 1963 through 1966 remained at exactly $151 each year. The plaintiff made no sales during the six-month period ending December 31, 1967. The record with regard to Sweetarts' operations in Indiana reflects that it had made very few sales at the time the defendants entered the market and had never made any significant sales. No evidence exists to indicate any growth potential for sales in Indiana. The plaintiff's sales record in Kansas (population 2,178,611) is equally devoid of evidence which would justify holding that state to be part of the plaintiff's effective market area. The plaintiff's sales in Kansas had declined from $711 in 1963 to $151 in 1966, with no sales at all during the six-month period ending December 31, 1967. The record in Kansas reflects few, if any, customers, no potential growth of sales and a considerable time lapse without any significant sales within the state.

While Sweetarts had made a fairly significant amount of sales in Montana (population 674,767) prior to the 1962 fiscal year, since that time Sweetarts' sales in Montana have been relatively insignificant, never exceeding $400 in a single year and showing no signs of increasing. The plaintiff has acquired no significant number of customers in Montana, has made no significant sales recently within the state and no potential growth is reflected in its sales data. The plaintiff's sales in Nebraska (population 1,411,330) reflect no definite trend, but rather fluctuate greatly. For example, the plaintiff made no sales in Nebraska during the 1964 fiscal year, but then sold $1,058 worth of candy the following year. The plaintiff had made relatively few sales in Nebraska prior to Sunline's 1963 entry into the candy market in that state under the name "SweeTarts". We consider plaintiff's market penetration in Nebraska too insignificant and fluctuating to support a determination that this state constituted part of the plaintiff's effective market.

Turning to the three most populous states in issue, New York, Illinois and Pennsylvania, the plaintiff's market penetration in these states is extremely

---

3. All population data cited herein are derived from 1960 census figures.

slight when compared to the state population involved. In New York, for example, the plaintiff averaged slightly more than $400 in annual sales for the period 1962 through 1966. Moreover, all of these sales were made to a single customer, which in turn distributed the candy as gifts to its customers in various parts of the country. Such a slight distribution of plaintiff's "SweeTarts" candy in a state with a population in excess of 16,000,000 people cannot constitute an effective market penetration. Similarly, in Illinois and Pennsylvania, states having populations in excess of 10,000,000 persons, the plaintiff has made relatively few sales and in each instance sells primarily to one customer within the state. To require defendant Sunline to abandon its established trade in these states on such a negligible showing of market penetration by the plaintiff would be most inequitable on this record.

In our earlier decision remanding this case, we directed the district court to consider all factors and set forth four significant factors as a measurement of market penetration to assist the trial court in making a determination of the plaintiff's effective market area. While both Sweetarts and Sunline sold candy products bearing the "SweeTarts" name, the candy products themselves, the marketing techniques and the customers of the two companies differed substantially. Nearly ninety per cent of the candy sold by the plaintiff was a butter toffee, the remainder consisting of mixed chocolates. Defendant Sunline sold a colored, powdery tablet with an artificial fruit flavoring. Plaintiff Sweetarts effected most of its sales through direct mail orders and ninety per cent of its sales were to fraternal and charitable organizations, the best single customer being Job's Daughters. Sunline, on the other hand, marketed its candy through the usual commercial channels leading to ultimate sales in retail outlets throughout the nation. Unlike the plaintiff, defendant Sunline expended considerable amounts to advertise its candy products. While we noted in our earlier opinion, *Swee-*

*tarts, supra,* 380 F.2d at 927, that these factors are not controlling on the issue of the plaintiff's effective market area, they are relevant.

■■ While we recognize that the issue of likelihood of confusion in a trademark infringement case is one of fact for the resolution by the trial court, Shoppers Fair of Arkansas, Inc. v. Sanders Co., 328 F.2d 496 (8th Cir. 1964), we hold on the basis of the undisputed facts on the record before us that the trial court erroneously concluded that a likelihood of confusion existed among customers of Sweetarts and Sunline in these eight states where the plaintiff showed only slight market penetration. Appellee Sweetarts misconstrues this court's decision in Sweet Sixteen Co. v. Sweet "16" Shop, 15 F.2d 920 (8th Cir. 1926), and our reference to that decision in our prior opinion in this litigation. Minimal market penetration alone will not suffice to establish infringement of a common-law trademark. The market penetration must be "significant enough to pose the real likelihood of confusion among the consumers in that area * * *." *Sweetarts, supra,* 380 F.2d at 929.

We find the comments of Mr. Justice Pitney in the landmark case of Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1915), to be appropriate and applicable here:

That property in a trademark is not limited in its enjoyment by territorial bounds, but may be asserted and protected wherever the law affords a remedy for wrongs, is true in a limited sense. Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress. But this is not to say that the proprietor of a trademark, good in the markets where it has been employed, can monopolize markets that his trade has never reached, and where the mark signifies not his goods, but those of another. * * * But the mark, of it-

self, cannot travel to markets where there is no article to wear the badge and no trader to offer the article. [240 U.S. at 415–416, 36 S.Ct. at 361]

In summary, this record contains insufficient evidence to indicate that the appellee's "SweeTarts" trademark upon its candies has become generally known or identified anywhere but in its principal market area of Washington, Oregon and California. We hold that these three states constitute the entire trade territory which plaintiff can justly claim as its effective market area. Hemmeter Cigar Co. v. Congress Cigar Co., 118 F.2d 64, 71 (6th Cir. 1941). See also Paul Sachs Originals Co. v. Sachs, 325 F.2d 212 (9th Cir. 1963); American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619 (5th Cir. 1963); Katz Drug Co. v. Katz, 188 F.2d 696 (8th Cir. 1951); Griesedieck Western Brewery Co. v. Peoples Brewing Co., 149 F.2d 1019 (8th Cir. 1945); General Baking Co. v. Goldblatt Bros., 90 F.2d 241 (7th Cir.), cert. denied 302 U.S. 732, 58 S.Ct. 56, 82 L.Ed. 566 (1937); Ammon & Person v. Narragansett Dairy Co., 262 F. 880 (1st Cir. 1919); 2 NIMS, UNFAIR COMPETITION AND TRADEMARKS 641–54 (4th Ed. 1947); Developments in the Law, Trade-Marks and Unfair Competition, 88 HARV.L.REV. 814, 857–61 (1955).

## APPEAL NO. 19766

After our remand in the initial appeal, the district court on September 8, 1967, enjoined the defendants from using the name "SweeTarts" or any word or words "confusingly similar thereto" in California, Oregon and Washington. The district court's order became effective March 1, 1968. Defendant Sunline thereafter changed its mark on its candies being sold in those three states to "Spree TARTS". In April, 1968, plaintiff presented a motion before the district court asking that the defendants be held in civil contempt and that plaintiff be awarded damages for defendants' violation of the injunction. Approximately one year later, the trial court filed its memorandum

opinion holding the defendants in civil contempt and awarding the plaintiff its counsel fees as actual damages, but denying the plaintiff's request for an accounting of the defendants' profits. The trial court further held that the plaintiff had failed to establish any proof of any additional damages as a result of the defendants' civil contempt. In its opinion, the trial court said:

The remaining question for consideration is the nature of · the order which should be entered relative to the contempt by the use of a confusingly similar tradename. This tradename was adopted with full knowledge of the plaintiff's rights in its name, and of the Court's decree against use of a confusingly similar tradename in the enjoined area. These facts, on their face, would appear to warrant a "judicial sanction" in the form of a daily "fine" for such behavior from this date forward. The Court will assume, however, that the defendants are more fully aware of their legal duties and obligations at this juncture of the proceedings than they were previously. Accordingly, the Court will not, at this time, assess a "fine" to insure future compliance, but will assume that the defendants will act in the utmost good faith without delaying tactics. [299 F.Supp. at 580].

On this appeal, Sweetarts contends (1) that the trial court erred in refusing to award it additional damages, (2) that the trial court erred in denying it an accounting, and (3) that the trial court erred in not awarding the plaintiff attorney's fees for services rendered subsequent to the hearing on the motion to hold the defendants in civil contempt. We reject these claims of error.

■ We note initially that an accounting for profits is a form of equitable relief and does not follow as a matter of course upon the mere showing of trademark infringement. See Williamson-Dickie Manufacturing Company v. Davis Manufacturing Company, 251 F.2d

924, 927 (3d Cir. 1958); Allen v. Standard Crankshaft & Hydraulic Company, 231 F.Supp. 301 (W.D.N.C. 1964). An accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case. See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 131, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947), and cases cited therein. See generally, Developments in the Law, Trade-Marks and Unfair Competition, 88 HARV.L.REV. 814, 863–67 (1955). The trial court's action on Sweetarts' motion for further relief fell within the scope of its equitable discretion. Siegerist v. Blaw-Knox Company, 414 F.2d 375 (8th Cir. 1969). Upon examining the entire record before us, we find no evidence to indicate that the trial court abused that discretion in concluding that the defendants' civil contempt resulted in no loss of sales to the plaintiff and in denying the requested accounting.

With respect to Sweetarts' claim for additional attorney's fees incurred subsequent to the contempt hearing, we note that the district court exercised its discretion in initially awarding plaintiff $1,570 in attorney's fees as actual damages. On June 13, 1969, the district court denied plaintiff's motion for an award of further attorney's fees "without prejudice" since the court felt it no longer had jurisdiction of the matter, as the cause had been then transferred to the jurisdiction of this court on Sunline's appeal in No. 19760. The matter of awarding additional attorney's fees falls within the discretion of the trial court and cannot be first presented on appeal. Whether the district court wishes to consider the plaintiff's motion for additional attorney's fees on remand, we leave to its sound discretion. We intimate no view as to the legitimacy of that claim.

Accordingly, we reverse upon Sunline's appeal in No. 19760, and affirm upon Sweetarts' appeal in No. 19766, and remand this matter for entry of an appropriate and, hopefully, a final judgment terminating this prolonged litigation.