**MINNESOTA PET BREEDERS, INC., Plaintiff–Appellant,**

v.

**SCHELL & KAMPETER, INC., Defendant–Appellee.**

No. 93–4134.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1994.

Decided Dec. 6, 1994.

Craig A. Goudy, Minneapolis, MN, argued (Orrin Haugen and Eric Haugen, on brief), for appellant.

Lionel K. Lucchesi, St. Louis, MO, argued (Michael Kovac and M. Lee Gerdelman, on brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and STEVENS,* District Judge.

LOKEN, Circuit Judge.

This appeal poses the question, is the owner of a registered trademark entitled to recover a willful infringer's profits from a trade area where the owner does not compete. The governing statute is § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). The district court [1] held that the trademark owner must

---

* The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge of the United States District Court for the Western District of Missouri, sitting by designation.

1. The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

prove actual market penetration of a geographic area to recover an infringer's profits. The court therefore granted summary judgment dismissing Minnesota Pet–Breeders, Inc.'s ("MPB"), claim for an accounting of Schell & Kampeter, Inc.'s ("S & K"), profits. Although we conclude that the district court construed the Lanham Act's equitable remedies too restrictively, on the facts of this case we affirm.

## I.

We review the judgment in favor of S & K in accordance with our well-established standards for reviewing a district court's grant of summary judgment. *See, e.g., Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990).

MPB manufactures dry pet food in Glyndon, Minnesota. MPB began selling pet food under the brand name "PRO–DIET" in 1980 and was granted federal registration of the trademark "PRO–DIET" in January 1987. MPB's annual sales of "PRO–DIET" pet foods rose to a peak of $70,380 in 1989 and then declined to $24,203 in 1992. Essentially all of those sales were in the States of Minnesota, North Dakota, and South Dakota.

S & K is a Missouri company that sells dry pet food under the brand name "NUTRA–NUGGETS." In late 1986 or early 1987, S & K added the word "ProDiet" to its existing "NUTRA–NUGGETS" pet food labels. When it learned of MPB's newly-registered mark, S & K unsuccessfully attempted to purchase the mark from MPB and then made a "conscious decision" to continue using the "NUTRA–NUGGETS ProDiet" packaging and labels. S & K's president testified during discovery, "no Minnesota milk farmer is going to tell us what name we can use."

No doubt advised of the risk of trademark infringement liability, S & K rather quickly began to phase out its use of the word "ProDiet." It did this in stages—moving first to the label "NUTRA–NUGGETS Professional Diet" and then to the label "NUTRA–NUGGETS Professional." MPB alleges that S & K stretched out this transition period to maximize its wrongful use of the "ProDiet" mark. In addition, MPB notes that S & K failed to change its Uniform Product Code designations and invoicing codes, thus causing customers to equate the new "NUTRA–NUGGETS Professional Diet" and "NUTRA–NUGGETS Professional" products with the prior infringing "NUTRA–NUGGETS ProDiet" products. S & K sold $663,882 of "NUTRA–NUGGETS ProDiet" products in 1987 and 1988, and $6,649,606 of "NUTRA–NUGGETS Professional Diet" products from 1987 to 1990, when its transition to the admittedly non-infringing "NUTRA–NUGGETS Professional" mark was completed. It is undisputed that S & K did not sell *any* "NUTRA–NUGGETS ProDiet" or "NUTRA–NUGGETS Professional Diet" products in Minnesota, North Dakota or South Dakota, the *only* States in which MPB sold "PRO–DIET" products.

In May 1990, MPB commenced this action, alleging willful infringement of its registered "PRO–DIET" trademark. Among other relief, MPB sought an injunction and an accounting of S & K's profits from its sales of "NUTRA–NUGGETS ProDiet" and "NUTRA–NUGGETS Professional Diet" products. After extensive discovery, S & K moved for summary judgment on issues of available remedy. With regard to injunctive relief, the district court concluded that genuine issues of material fact precluded summary judgment, such as likelihood of customer confusion and whether S & K has voluntarily ceased using an infringing mark. However, the court granted partial summary judgment dismissing MPB's claim to recover S & K's profits, 843 F.Supp. 506. The court held that a trademark owner may recover an infringer's profits under the Lanham Act only from trade areas where the owner's trademarked products have achieved "actual market penetration," the test we applied for awarding monetary relief in *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 929 (8th Cir. 1967) (*Sweetarts I*); *Sweetarts v. Sunline, Inc.*, 436 F.2d 705, 708 (8th Cir.1971) (*Sweetarts II*); and *Truck Equip. Serv. Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1221 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976). On appeal, MPB concedes that it cannot satisfy this test; it argues that the district court erred in apply-

ing the test to a case of willful infringement of a registered mark.

## II.

■ Following the district court's grant of partial summary judgment, MPB voluntarily dismissed all its remaining claims for the purpose of making the district court's profits ruling final and appealable. If MPB took this action assuming that it could later revive its claims for other relief, it has badly miscalculated.

When entered, the district court's profits order did not resolve all of MPB's claims and therefore was not appealable absent a Fed. R.Civ.P. 54(b) determination. A Rule 54(b) determination would have been an abuse of the district court's discretion—the rejection of one form of Lanham Act equitable relief, an accounting of profits, should not be appealed until the court has resolved whether MPB is entitled to Lanham Act injunctive relief. *Compare Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627 (2d Cir.1991). That being so, MPB may not evade the final judgment principle and end-run Rule 54(b) by taking a tongue-in-cheek dismissal of its remaining claims. Those claims must be deemed dismissed with prejudice. As we discuss below, this significantly affects our disposition of the profits issue.

## III.

Although this appeal involves only one type of Lanham Act relief, an accounting of an infringer's profits from a geographic area where the trademarked products do not compete, it is useful to frame the issue in its broader, historical context.

### A.

Before passage of the Lanham Act in 1946, federal trademark law did not confer greater rights than existed at common law. Applying the common law of trademarks, the Supreme Court decided two landmark cases involving an infringing use in a geographic area where the trademark owner's products were not sold. The Court held that the owner of the "senior" common law mark may not oust the good faith user of a "junior" infringing mark from a local market remote from the senior user's trade area. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918); *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916). This came to be known as the *Tea Rose–Rectanus* doctrine. Its application typically raises two fact-intensive issues—whether the junior user acted in good faith, and whether its infringing use was limited to a remote geographical area. *See generally* 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* ch. 26 (3d ed. 1992).

Here, the district court relied upon Eighth Circuit cases that applied the *Tea Rose–Rectanus* doctrine. *Sweetarts* was a common law trademark case. In the first appeal, we held that defendant, the junior user, acted in good faith and therefore plaintiff, owner of the senior common law mark, had no right to protection in geographic areas independently developed by defendant. We remanded for findings on this geographic issue, stating that plaintiff must prove "market penetration ... significant enough to pose the real likelihood of [customer] confusion ... between the products of plaintiff and the products of defendants." *Sweetarts I,* 380 F.2d at 929. In the second appeal, we held that plaintiff had failed to prove sufficient market penetration "anywhere but in its principal market area of Washington, Oregon and California." *Sweetarts II,* 436 F.2d at 711.

*Fruehauf* was a Lanham Act suit to remedy unfair competition, namely, defendant's copying of plaintiff's unregistered trade dress (product design). The district court awarded plaintiff twenty percent of defendant's profits from sales in plaintiff's trade area, and plaintiff appealed. We held (i) that *Sweetarts I* limited the "scope of protection" accorded plaintiff to its "geographical area of actual product market penetration," but (ii) that plaintiff was entitled to an accounting for all of defendant's profits in that area as a necessary deterrent to defendant's willful, bad faith infringement. 536 F.2d at 1221–23.

■ Applying *Sweetarts* and *Fruehauf,* the district court held as a matter of law that MPB may only recover profits from S & K's infringing sales in MPB's area of "actual

market penetration," Minnesota, North Dakota, and South Dakota. However, this common law test may not be borrowed without considering the fact that MPB owns a federally registered trademark. Federal registration under the Lanham Act gives the trademark owner a nationwide *right* to protection. In this respect, the Lanham Act partially overruled the *Tea Rose–Rectanus* doctrine[2] —the owner of a mark registered under the Lanham Act, by expanding to a new trade area, may force any subsequent junior user to stop using an infringing mark in that area, even if the junior user adopted its mark in complete good faith. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 200, 105 S.Ct. 658, 664–65, 83 L.Ed.2d 582 (1985). *Sweetarts* and *Fruehauf* did not involve plaintiffs who possessed this right derived from Lanham Act registration.

## B.

The *Tea Rose–Rectanus* doctrine denied a common law trademark owner the right to protection in a remote geographic area. This case, then, raises a related but different issue—does the nationwide *right* conferred by Lanham Act registration entitle the trademark owner to equitable *remedies* for an infringer's conduct in a trade area that the registered mark has not yet "penetrated." Consistent with other circuits, and with the plain meaning of the statute, we have held that the nationwide right conferred by registration does not entitle the owner to injunctive relief unless there is a present likelihood of confusion.[3] Therefore, to enjoin a geographically remote infringer, the registered owner must prove that its trademarked products and the infringing products are being sold in the same geographic area, or that the owner has concrete plans to expand into the infringer's trade area. *See Comidas Ex-*

*quisitos, Inc. v. O'Malley & McGee's, Inc.,* 775 F.2d 260 (8th Cir.1985).

Applying this principle, the district court properly denied summary judgment dismissing MPB's request for injunctive relief. MPB presented some evidence of plans to expand its marketing of "PRO–DIET" products, in which case MPB would no doubt enter neighboring States such as Missouri, Nebraska, and Kansas, where S & K sold the allegedly infringing products. MPB's evidence of probable expansion was not strong, particularly in light of the declining sales of "PRO–DIET" products in Minnesota and the Dakotas, but it cannot be dismissed out of hand under Rule 56. And if MPB's professed expansion plans are credible, this becomes a case of "reverse confusion":

> Reverse confusion occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user. In such a case, the junior user does not seek to profit from the good will associated with the senior user's mark. Nonetheless, the senior user is injured....

*Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). Thus, the decision whether MPB warranted injunctive relief for willful infringement of its registered mark required a complete factual record.

When the district court turned to MPB's request for an accounting of profits, however, it took an entirely different approach, reasoning from *Sweetarts* and *Fruehauf* that such relief is unavailable as a matter of law because MPB had no *actual* market penetration where the infringing products were sold. We disagree with this categorical approach. A number of cases have recognized that an accounting for profits may

---

2. The Supreme Court in *Rectanus* noted that Congress could expand the geographic rights conferred by federal registration. 248 U.S. at 99–100, 39 S.Ct. at 51–52. Congress did so in the Lanham Act.

3. The statute defines an infringing use as one that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The leading case for the proposition that the owner of a registered mark has no right to in-

junctive relief until, by actual or intended expansion, it can prove a present likelihood of customer confusion is *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir.1959). *See also Maltina Corp. v. Cawy Bottling Corp.,* 613 F.2d 582 (5th Cir.1980); *Armand's Subway, Inc. v. Doctor's Assocs., Inc.,* 604 F.2d 849, 850–51 (4th Cir.1979); *Mister Donut of America, Inc. v. Mr. Donut, Inc.,* 418 F.2d 838, 844 (9th Cir.1969).

be appropriate to remedy a registered owner's actual loss, or to deter a willful bad faith infringer, despite the absence of direct competition between the trademarked and infringing products.[4] The decisions in *Sweetarts* and *Fruehauf* were based upon the plaintiff's lack of common law or Lanham Act *rights* in the infringer's trade area. Registration provided MPB with a right; the question is one of remedy. Because all Lanham Act remedies are equitable in nature, and because § 1114(1) makes available "the remedies hereinafter provided" upon proof of the likelihood of confusion, we conclude that one equitable remedy, an accounting of profits, cannot be unavailable as a matter of law when another equitable remedy, injunction, requires a trial.

### C.

■ MPB's argument on appeal takes us this far but then fails to acknowledge that the Lanham Act remedy issue is yet more complex. If a registered owner proves willful, deliberate infringement or deception, "an accounting of profits may be based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." *Banff, Ltd. v. Colberts, Inc.,* 996 F.2d 33, 35 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 599, 126 L.Ed.2d 564 (1993). However, § 35(a) of the Lanham Act does not permit the award of monetary relief as a penalty.[5] *Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710, 715 (8th Cir.1980). Moreover, because the Act is grounded in equity and bars punitive remedies, "an accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." *Sweetarts,* 436 F.2d at 711–12, citing *Champion Spark Plug Co. v. Sanders,* 331 U.S. 125, 131, 67 S.Ct. 1136, 1139–40, 91 L.Ed. 1386 (1947), a pre-Lanham Act case often cited for the proposition that relief in a Lanham Act case

should be limited to an injunction if that is sufficient to do equity.

■ Because an injunction is the preferred Lanham Act remedy, a court of equity may not even consider an award of profits in a geographic case of this kind until all injunction issues have been resolved. If the court grants an injunction limiting use of the infringing mark because plaintiff has shown likelihood of confusion in defendant's trade area, the court may then consider whether the equities require additional monetary relief for willful infringement, as in *Tonka Corp.,* 229 U.S.P.Q. at 754. But if the registered owner is not entitled to an injunction, the additional claim for an award of profits will almost inevitably be denied. *See Dawn Donut Co.,* 267 F.2d at 365. *Cf. Hamilton–Brown Shoe Co. v. Wolf Brothers & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 271–72, 60 L.Ed. 629 (1916) (the right to an infringer's profits is grounded in most cases on the right to an injunction).

■ In this case, MPB has dismissed its claim for injunctive relief, meaning that MPB has precluded entry of the Lanham Act's preferred remedy. There might be some situations in which a Lanham Act plaintiff would be entitled to monetary but not injunctive relief, for example, if the defendant's willful infringement has driven the trademark owner out of business. But in this case, in which there was *no* actual competition between the trademarked and the infringing products, it is most likely that MPB would be entitled to injunctive but not monetary relief, and virtually inconceivable that only monetary relief would be appropriate. In these unusual circumstances, although the district court should have deferred ruling on MPB's claim for profits until after trial of the injunction claim, MPB has deprived the court on remand of its ability to do equity, and

---

4. *See Sands, Taylor,* 978 F.2d at 961–63; *Maltina Corp.,* 613 F.2d at 585; *Maier Brewing Co. v. Fleischmann Dist. Corp.,* 390 F.2d 117, 123 (9th Cir.), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968); *Tonka Corp. v. Tonk–A–Phone, Inc.,* 229 U.S.P.Q. (BNA) 747, 1985 WL 6137 (D.Minn.1985), *aff'd,* 805 F.2d 793 (8th Cir.1986).

5. § 35(a) provides: "If the court shall find that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. *Such sum … shall constitute compensation and not a penalty."* 15 U.S.C. § 1117(a) (emphasis added).

therefore the judgment of the district court must be affirmed.