**FLAVOR CORPORATION OF AMERICA, Plaintiff,**

v.

**KEMIN INDUSTRIES, INC., and Rolland W. Nelson, Defendants.**

Civ. No. 11–409–C–1.

United States District Court,
S. D. Iowa,
Central D.

March 12, 1973.

**1116**

Malcolm McCaleb, Sr., Malcolm McCaleb, Jr., William E. Lucas, Chicago, Ill., Donald A. Wine, Des Moines, Iowa, for plaintiff.

Donald H. Zarley, Michael G. Voorhees, Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION

STUART, District Judge.

This is a trademark infringement and unfair competition action brought by Flavor Corporation of America (FCA) against Kemin Industries, Inc. (Kemin) and its president, Rolland W. Nelson. The two companies make, among other things, flavor additives for certain animal feeds and rodenticides. Defendants deny any infringement and have, by counterclaim, asserted plaintiff maliciously damaged defendants' business through various libelous acts of unfair competition. The parties seek both injunctive relief and monetary damages, but issues relating to monetary damages have been separated and are to be tried subsequent to this trial on the issues of trademark infringement and unfair competition.

Jurisdiction of this court arises under the trademark laws, 15 U.S.C. § 1121, and diversity of citizenship, 28 U.S.C. § 1332.

FCA was organized in 1946. From its inception its principal products have been various flavorings for animal feeds designed to appeal to a particular species. In 1956 it added to its product line a fla-voring additive for rodenticides and rodent baits. It immediately adopted a trademark, "PESTLUR", to identify the product. In 1961 a second product, "Rodentlur", designed to attract rodent pets to feed as well as for use in rodenticides, was added. "Fishlur", a flavor additive for fish feeds and baits, was first advertised in 1961 and first sold in 1962.

From August, 1958, to December, 1961, defendant R. W. Nelson was employed by plaintiff as a regional sales manager. The last 6 weeks of his employment he was acting sales manager of the company.

Early in 1962 Nelson formed his own company, Chemical Industries, Inc. The name was later changed to Kemin. This company became a direct competitor to FCA selling the same type of products to the same classes of customers. Shortly thereafter Nelson began promoting and selling his products under trademarks such as "PIG LURE", "CATTLE LURE", "CALF LURE", "CAT LURE", "STOCK LURE", "DOG LURE", "HORSE AND PONY LURE", "TURKEY LURE", "CHICK LURE", and "RAT LURE". It should be pointed out that the main area of competition between the parties is in flavorings for animal feeds in which plaintiff's trademark is "NECTAR". Rodenticide flavorings are a very small part of the business of either company.

"PESTLUR" was registered on the Principal Register of the United States Patent Office on September 22, 1964. Plaintiff sent formal notice of infringement to defendants in October, 1964.

In 1966 defendant Kemin's predecessor, Chemical Industries, Inc., was issued a registration on the Supplemental Register for its mark "LURE", flavoring for animal feeds. FCA immediately petitioned for cancellation of said "LURE" trademark, which petition was granted by the Patent Office Trademark Trial and Appeal Board (Board) relying on the trademark registration of "PESTLUR" and previous usage of "FISHLUR" and "RODENTLUR". On May 13, 1971,

the United States Court of Customs and Patent Appeals (CCPA) sustained the Board on the basis of "PESTLUR" but did not consider the propriety of the Board's reliance on "FISHLUR" and "RODENTLUR". Kemin Industries, Inc. v. Flavor Corporation of America, 440 F. 2d 1375. Less than one month later this action was commenced in the Northern District of Illinois.

## RES JUDICATA OR COL-LATERAL ESTOPPEL

Before consideration of the issues on the merits, the Court must decide the threshold issue of the legal effect of previous action of the Board and the decision of the CCPA.

The parties now seem to agree this trademark infringement suit involves a different cause of action than the previous cancellation proceeding and that the question is therefore one of collateral estoppel rather than res judicata. This means that the only issues precluded are those which were actually tried by the Board and affirmed by the CCPA.

Plaintiff argues that since the enactment of 28 U.S.C. § 211 in 1958, the CCPA has been a Constitutional Court under Article III of the Constitution and its decisions are entitled to the same effect as any other Constitutional Court, citing Brenner v. Manson (1966), 383 U. S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69. It is plaintiff's position that the issues of confusing similarity of marks and the same channels of trade were decided favorably to plaintiff by the Board and affirmed by the CCPA and these findings are conclusive in this action. Judge Levin so held in a similar action. Libbey-Owens-Ford Glass Co. v. Shatterproof Glass Corp. (E.D.Mich., 1970), 165 USPQ 335, 336.

Defendants urge several reasons why the doctrine of collateral estoppel should not be applied:

(1) The overwhelming weight of judicial authority precludes invoking a CCPA decision in a cancellation proceeding as collateral estoppel in a subsequent trademark infringement suit.

(2) The issue of likelihood of confusion in an infringement suit is guided by different legal principles than the issue of likelihood of confusion in a cancellation proceeding.

(3) The cancellation proceeding was tried by an administrative board with limited jurisdiction, not a true court.

(4) The marks and goods involved in the present suit are different than the marks and goods involved in the cancellation proceeding.

(5) There has been a change in circumstances.

(6) The decision was influenced by plaintiff's fraud.

(7) The two findings urged by plaintiff as binding on this Court are only mediate data from which likelihood of confusion, the ultimate fact, may be inferred.

They will be discussed in order.

### (1)

■ Defendants contend the overwhelming weight of judicial authority holds a CCPA decision in a cancellation proceeding does not apply as a collateral estoppel in a subsequent trademark infringement suit. I cannot agree.

In Postum Cereal Co. v. California Fig Nut Co. (1927), 272 U.S. 693, 47 S. Ct. 284, 71 L.Ed. 478, the Supreme Court held the opinion of the Court of Patent Appeals was an administrative decision of the patent office, rather than a judicial judgment. As a result of this decision, it was held in John Morrell & Co. v. Doyle (7th Cir., 1938), 97 F.2d 232, 235, that a decision of the CCPA on the issue of likelihood of confusion in an application for registration of a trademark was not a final determination of the same issue in an infringement action.

However, in Brenner v. Manson (1965), 383 U.S. 519, 86 S.Ct. 1033, 16 L. Ed.2d 69, involving the Supreme Court's right to review a CCPA decision by cer-

tiorari, the Court held the 1948 amendment to 28 U.S.C. § 1256 gave the CCPA the status of an Article III Constitutional Court, saying: "Thus the decision sought to be reviewed is that of an Article III Court. It is 'judicial' in character. It is not merely an instruction to the Commissioner or part of the 'administrative machinery' of the Patent Office. It is final and binding in the usual sense."

Defendants seek some comfort from a footnote to the above statement in which the Court states: "This is not to say that a CCPA determination that an applicant is entitled to a patent precludes a contrary result in a subsequent infringement suit, any more than issuance of a patent by the Patent Office or the decision in an earlier infringement action against a different 'infringer' has that effect."

However, the situations referred to in the footnote were either ex parte or third party proceedings in which the litigants did not have their day in court. In the instant case the issues were fully explored in an administrative hearing between these same parties and the decision was affirmed on appeal by an Article III Court. I do not believe the footnote applies to the proceedings in the instant case.

Defendants rely heavily on John Morrell & Co. v. Doyle, supra, and cite several cases which have allegedly followed it. In Sam S. Goldstein Industries, Inc. v. Botany Industries, Inc. (S.D.N.Y., 1969), 301 F.Supp. 728, 731, the Court, in deciding whether to stay proceedings pending determination of a patent office proceeding, commented that the findings would not be res judicata. This comment was based on a party's right under 15 U.S.C. § 1071(b) to bring a civil action in the District Court rather than appeal to the CCPA under § 1071(a). Here appeal was taken to the CCPA by defendants who thereby waived their rights under § 1071(b). Statements made in that opinion do not apply to these facts.

The statements in Tuvache, Inc. v. Emilio Pucci Perfumes International (S.

D.N.Y., 1967), 263 F.Supp. 104, are also based on the availability of § 1071(b) and have no application here.

The decision in Syncromatic Corporation v. Eureka Williams Corp. (7th Cir., 1949), 174 F.2d 649, relied on the Morrell case and preceded the Supreme Court decision in Brenner v. Manson. So did the decision in Lucien LeLong, Inc. v. Dana Perfumes (N.D.Ill., 1955), 138 F. Supp. 575. In addition, the LeLong case did not proceed to final judgment. A suit brought in the United States District Court to review the Cancellation Order of the Commissioner of Patents was dismissed voluntarily.

Defendants also rely on certain excerpts from SweeTarts v. Sunline, Inc. (8th Cir., 1967), 380 F.2d 923, 925, in which the Court said:

"A trademark search was made in the United States Patent Office, and the search turned up the name 'Sweetheart' for candy products, 'Sweetart' for cranberries, and plaintiff's 'SweeTarts' for dried prunes. Smith decided to take a 'businessman's risk' and use the mark 'SweeTarts'."

Footnote 1 stated: "Defendant corporation sought to register its mark with the United States Patent Office in November 1963. Registration was refused on the basis that there would be a likelihood of confusion between defendants' mark and prior registered marks. This determination, however, can have no direct influence upon our decision herein. We are concerned solely with the common law rights between the two parties who are now before the court."

Apparently registration was refused in an ex parte administrative action. These parties were not involved in an adversary hearing nor was an appeal taken to the CCPA. No determination had yet been made in a controversy between the two parties which would have had the effect of a collateral estoppel. In my opinion the SweeTarts case does not support defendants' contention here.

Libbey-Owens-Ford Glass Co. v. Shatterproof Glass Corp. (E.D.Mich., 1970),

165 USPQ 335, 336, reached the court in much the same manner as the instant case. Judge Levin, in a well supported opinion, reached the conclusion that "issues and questions of fact which were actually litigated and determined by the CCPA are conclusive in this action."

. I agree and so hold.

(2)

 The next question is to determine whether the issues involved in the instant case were actually tried and determined in the CCPA decision. Defendants contend there are two separate bodies of law dealing with the issue of likelihood of confusion. One dealing with the right to register a mark (patent office) and the other dealing with the right to use or enjoin the use of a mark (federal courts).

Defendants contend patent office decisions do not deal with the realities of the market place, but determine the likelihood of confusion in the artificial context of the wording of the application to register.

While it is true that use of a trademark in established trade areas is sometimes referred to as a factor to be considered in determining "likelihood of confusion," and courts have stated there is no likelihood of confusion if the trade areas are different, I believe, for our purposes here, it is better to consider this factor in connection with the extent of injunctive relief to which plaintiff may be entitled. With this factor eliminated, "likelihood of confusion" in the cancellation proceedings and this infringement case have the same meaning. The determinations that "Lure" so resembles "the registered mark 'Pestlur' as to be likely, when applied to Kemin goods, to cause confusion, or to cause mistake, or to deceive," Kemin Industries, Inc. v. Flavor Corporation of America, 440 F.2d 1375, and that the products flow in similar channels of trade are binding on this court.

The statutory language is substantially the same. The registration statute, 15 U.S.C. § 1052, provides:

"No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it * * * (D) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, *as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake or to deceive."*

The infringement statute, 15 U.S.C. § 1114, provides in part:

"Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction * * * of a registered mark in connection with the sale * * * or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive, * * * shall be liable in a civil action by the registrant."*

As a trademark, whether registered or not, is a creature of the common law, Restatement of the Law, Torts § 715 page 558, it would seem that "likelihood of confusion" should have the same meaning in both instances. Otherwise the tests would be different in the same infringement suit based on both a registered mark and a common law trade name.

An examination of the Transcript of Record filed in the CCPA in defendants' appeal from the decision of the Board discloses the evidence presented was very similar to that presented in this case. The brief filed by these defendants as appellants in that action presented as error the following:

"The Board erred in concluding that the similarity between "LURE" and "Pestlur" and "Rodentlur" is such as would be *likely to cause confusion, or mistake or to deceive.* The Board also erred in concluding that appellants' and appellee's goods were purchased by the same class of purchasers."

Arguments advanced at that time are urged here. In the Court's opinion the issues of likelihood of confusion and the

issue of same channels of trade decided by the CCPA are identical to the issues defendants would have the court decide again here. As the issues were decided against them by an administrative board which was affirmed on defendants' appeal to an Article III Court, the holdings become conclusive against them unless one or more of the other matters urged by defendants prevent the preclusion of these issues under the doctrine of collateral estoppel.

Whether the extent of market penetration by plaintiff has been sufficient in a particular state to create a "real likelihood of confusion," SweeTarts, Inc. v. Sunline, Inc., supra, entitling plaintiff to protection has not been determined by the Board or the CCPA. This matter remains open for decision by this Court and will be considered later in this memorandum.

### (3)

■ Defendants contend the issue is of likelihood of confusion and same channels of trade were decided by an administrative board of limited jurisdiction and that the decision of the CCPA merely determined that the Board's findings were not clearly erroneous.

It would seem logical that if the only issue decided by the CCPA was whether or not the Board's decision was supported by substantial evidence, that is the only issue which should be precluded by the CCPA decision. Vestal, Res Judicata-Preclusion p. 225. However, the fact that the specific issues of fact were determined by an administrative board does not in and of itself prevent the Board's holding from creating a collateral estoppel. "If the decision is a factual matter and if it has been rendered by an agency with fact finding procedures which approximate those of a court, then preclusion should obtain. On the other hand, if the decision involves a special characteristic of administrative agencies, such as relaxed rules of evidence, then perhaps the determination should not be preclusive. Preclusive effect should be given only to those determinations which

closely approximate the decisional process of courts." Vestal Res Judicata-Preclusion p. 224.

Nothing in the record indicates the Board used evidence which would not have been acceptable in the courts. I am of the opinion that the proceedings before the Trademark Trial and Appeal Board approximated the decisional process of courts and this Court is precluded from redetermining factual issues resolved therein followed by an appeal to the CCPA. See Sunshine Coal Co. v. Adkins (1940), 310 U.S. 381, 401–404, 60 S.Ct. 907, 84 L.Ed. 1263.

### (4)

■ Defendants contend collateral estoppel should not be invoked because the marks and goods involved in the present suit are different from the marks and goods involved in the cancellation proceedings. The Board's decision was based on the likelihood of confusion between plaintiff's mark "PESTLUR" and "LURE", a flavoring additive for animal feeds. In the instant case the name of the animal for which it is intended is used in conjunction with "LURE", i.e. "Pig Lure", "Calf Lure", "Chick Lure", etc.

The record shows such descriptive words have been used with "LURE" from the beginning. The dominant feature of the mark is "LURE" and the descriptive words do not aid in identifying the product as that of defendants. In my opinion the marks involved here are the same as were involved in the application for registration.

### (5)

■ In determining flavorings for rodenticides and flavor additives for animal feeds were not in vastly different channels of trade the Board and the CCPA both referred to the fact that there was at least one manufacturer of both rodenticides and animal feeds. Defendants' evidence at the trial disclosed this manufacturer was no longer in existence. They claim this was such a

change in circumstances that the CCPA decision should not preclude this court's consideration of the issue of likelihood of confusion.

I do not believe such a change in the factual situation following a court decision makes collateral estoppel inapplicable. If this were so, there would be very few occasions where it would be of use in accomplishing its primary purpose of bringing an end to litigation. This was just one piece of evidence relating to similar channels of trade which in turn is only a factor to be considered in determining the ultimate issue of likelihood of confusion.

### (6)

Defendants' claim that collateral estoppel should not be invoked because the Board's decision was influenced by plaintiff's fraud is not supported by the record.

### (7)

Lastly, defendants claim the findings of likelihood of confusion and similar channels of trade constitute only mediate data from which likelihood of confusion in the present suit may only be inferred, citing The Evergreens v. Nunan (2nd Cir., 1944), 141 F.2d 927.

While the decided fact of similar channel of trade might have been classified by Judge Hand as mediate, likelihood of confusion is an ultimate fact within the definitions of that opinion. As it has heretofore been held that likelihood of confusion was the same issue before the Trademark Trial and Appeal Board and the CCPA and in the instant case, the cited case does not support defendants' contention.

The Court is of the opinion that the decision of the Trademark Trial and Appeal Board which these defendants appealed to the Court of Customs and Patent Appeals under 15 U.S.C. § 1071(a), thereby waiving their right to commence a civil action under 15 U.S.C. § 1071(b), operates as a collateral estoppel and precludes this court from relitigating the issue of likelihood of confusion. Whether this Court would have reached the same conclusion if it had the right to consider the issue is not important or relevant.

Therefore this Court holds that defendants, by using the word "LURE" in conjunction with descriptive words designating the animal for which the flavor additive is intended, infringes upon plaintiff's mark "PESTLUR".

### RODENTLUR AND FISHLUR

The Court is of the opinion that the determination of infringement must be confined to the likelihood of confusion between "PESTLUR" and "LURE" because plaintiff's use of RODENTLUR and FISHLUR have been so minimal that there is no real likelihood of confusion. SweeTarts v. Sunline, Inc. (8th Cir., 1971), 436 F.2d 705, 707. Neither mark was registered. The CCPA decision related only to the term "PESTLUR".

### INJUNCTIVE RELIEF

Having determined that this Court is bound by the previous action of the Trademark Trial and Appeal Board and the CCPA, the Court must now determine the extent of injunctive relief to which plaintiff is entitled. SweeTarts v. Sunline, Inc. (8th Cir., 1967), 380 F.2d 923, 928, (8th Cir., 1971), 436 F.2d 705.

Defendants claim the trademark rights of the parties were substantially established at common law prior to the registration of "PESTLUR" on September 22, 1964, by the prior use of the marks in conjunction with the products of the respective parties and that plaintiff cannot have an injunction in any states where it has not done business and defendant had done business prior to registration. Hanover Star Milling Co. v. Metcalf (1915), 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Rectanus Co. (1918), 248 U.S. 90, 39 S. Ct. 48, 63 L.Ed. 141.

Plaintiff claims these authorities are not applicable and that this is not a case for concurrent use under 15 U.S.C. §

1052(d) because Nelson did not adopt his "LURE" marks innocently and in good faith without knowledge plaintiff's use of PESTLUR, RODENTLUR, and FISHLUR and that plaintiff is entitled to blanket protection.

## GOOD FAITH

■ Plaintiff relies heavily on its contention that Nelson adopted the "LURE" trademark in bad faith and with knowledge of prior use of the mark by FCA. Mr. Nelson denied knowledge of the PESTLUR, RODENTLUR, and FISHLUR marks.

Plaintiff introduced into evidence its 1961 price catalog which Nelson had used as a salesman listing prices for these products. One invoice showed he had received a few dollars commission on "Rodentlur" on a sale made from the home office, not by him personally. He received a copy of this invoice. Plaintiff argues: "It is incredible that a man who achieved the promotion to acting sales manager would deny knowledge of the company's products and deny knowledge of his company's price catalogs."

Although the Court was not impressed with Mr. Nelson's testimony, the Court is of the opinion the "LUR" products constituted such a minor part of plaintiff's business and Nelson's actual exposure to the term was so minimal, that in all probability he had no recollection of ever having seen the marks in connection with plaintiff's business. This conclusion is supported by the testimony of Nelson's successor as sales manager for plaintiff who testified he was unaware that plaintiff sold any products under these marks. The small dollar volume of sales is discussed later in this memorandum.

In addition, Mrs. Nelson testified she suggested the use of the word "LURE" in connection with the flavorings for animal feeds.

The Court therefore finds defendants' adoption and use of the mark "LURE" was in good faith and without knowledge that plaintiff has used "LUR" as part of a trademark.

## CONCURRENT USE AND MARKET AREA

Having found defendants' adoption of the mark was done in good faith and without knowledge of use of a similar mark by plaintiff, it follows that plaintiff is not entitled to protection in market areas independently developed by defendants. "However, defendants' right to use the same mark in territory remote from territory developed by plaintiff does not allow defendants to invade territory already occupied by plaintiff's product. Plaintiff's prior use of its trademark within a given market area entitled it to exclusive use of that mark within that area." SweeTarts v. Sunshine, Inc., supra, 380 F.2d at 928.

The SweeTarts case was remanded for a factual determination of plaintiff's market area. The Court said: "Though the market penetration need not be large to entitle plaintiff to protection, Sweet Sixteen Co. v. Sweet 16 Shop, 15 F.2d 920 (8th Cir., 1926), it must be significant enough to pose the real likelihood of confusion among the consumers in that area between the products of plaintiff and the products of defendants." Supra, 380 F.2d at 929.

After the district court, on remand, had found sufficient market penetration in certain states, the circuit court reversed, stating that the evidence was insufficient to indicate the trademark had become generally known or identified in those states, and held plaintiff could not justly claim them in its effective market area. SweeTarts v. Sunline, Inc. (8th Cir., 1971), 436 F.2d 705, 711.

■ There is evidence that FCA has made a nationwide mailing of its price catalogs which listed PESTLUR, FISHLUR, and RODENTLUR. In my opinion this alone is not sufficient market penetration to entitle FCA to an injunction. In SweeTarts, plaintiff there had solicited business from YMCA's all over the country. 436 F.2d 705, 708.

The following chart shows the dollar sales of FCA and Kemin since each entered the market under their respective trademarks until "PESTLUR" was registered by FCA.

COMPARATIVE DOLLAR SALES — KEMIN AND FCA

| STATE | | 1956 | 1957 | 1958 | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 |
|---|---|---|---|---|---|---|---|---|---|---|
| Ala. | (Kemin) | | 0 | 0 | | | | | | 180 |
| | (FCA) | | 7 | 10 | | | | | | 0 |
| Ariz. | (Kemin) | | | | | | | | 18 | |
| | (FCA) | | | | | | | | 0 | |
| Calif. | (Kemin) | | | | | | | | 745 | 3616 |
| | (FCA) | | | | | . | | | 0 | 0 |
| Colo. | (Kemin) | | | | | | | | 83 | 324 |
| | (FCA) | | | | | | | | 0 | 0 |
| Fla. | (Kemin) | | 0 | 0 | | 0 | 0 | 0 | 0 | 0 |
| | (FCA) | | 8 | 13 | | 390 | 390 | 260 | 135 | 135 |
| Ga. | (Kemin) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 163 | 0 |
| | (FCA) | 7 | 13 | 286 | 1521 | 1040 | 780 | 780 | 1040 | 1950 |
| Ida. | (Kemin) | | | | | | | | | 563 |
| | (FCA) | | | | | | | | | 0 |
| Ill. | (Kemin) | | 0 | 0 | | | | 394 | 1015 | 1004 |
| | (FCA) | | 8 | 13 | | | | 0 | 0 | 0 |
| Ind. | (Kemin) | | | 0 | | 0 | | 15 | 247 | |
| | (FCA) | | | 13 | | 3 | | 0 | 0 | |
| Ia. | (Kemin) | | | | | | 0 * | 15879 | 23835 | 20735 |
| | (FCA) | | | | | | 35 (R) | 0 | 0 | 0 |
| Kan. | (Kemin) | | | | | | | 108 | 1534 | 491 |
| | (FCA) | | | | | | | 0 | 0 | 0 |
| Ky. | (Kemin) | | 0 | 0 | 0 | | | | 1325 | 810 |
| | (FCA) | | 13 | 1 | 3 | | | | 0 | 0 |
| La. | (Kemin) | | 0 | 0 | 0 | | | 0 | 0 | 0 |
| | (FCA) | | 130 | 104 | 33 | | | 17 | 19 | 9 |
| Md. | (Kemin) | | | | | | | | 410 | |
| | (FCA) | | | | | | | | 0 | |
| Mass. | (Kemin) | | | | | | | 0 | | |
| | (FCA) | | | | | | | 31 | | |
| Minn. | (Kemin) | | | | | | | 780 | 1935 | 2732 |
| | (FCA) | | | | | | | 0 | 0 | 0 |
| Miss. | (Kemin) | | | | | | | 150 | 15 | |
| | (FCA) | | | | | | | 0 | 0 | |
| Mo. | (Kemin) | | | | | | | 4581 | 4295 | 7065 |
| | (FCA) | | | | | | | 0 | 0 | 0 |
| Nebr. | (Kemin) | | | | | | | 4950 | 11032 | 10274 |
| | (FCA) | | | | | | | 0 | 0 | 0 |
| N.J. | (Kemin) | | | | | | 0 | 0 | 0 | 0 |
| | (FCA) | | | | | | 11 | 23 | 23 | 39 |

＊ (R) Rodentlur

[A7543]

| STATE | 1956 | 1957 | 1958 | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 |
|---|---|---|---|---|---|---|---|---|---|
| (Kemin) | | | | | | | | | 360 |
| N, Mex. (FCA) | | | | | | | | | 0 |
| (Kemin) | | | | | | | | 64 | 99 |
| N.Y. (FCA) | | | | | | | | 0 | 0 |
| (Kemin) | | | 0 | | | | | 180 | 180 |
| N.Car. (FCA) | | | 88 | | | | | ·0 | 0 |
| (Kemin) | | | | | | | | 2170 | 1569 |
| Ohio (FCA) | | | | | | | | 0 | 68 |
| (Kemin) | | | | | | | 360 | 360 | 159 |
| Okla. (FCA) | | | | | | | 0 | 0 | 0 |
| (Kemin) | | | | | | | 18 | | |
| Ore. (FCA) | | | | | | | 0 | | |
| (Kemin) | | | | | | | 180 | 1255 | |
| Pa. (FCA) | | | | | | | 0 | 0 | |
| (Kemin) | | | | | | | | 285 | |
| S. Car. (FCA) | | | | | | | | 0 | |
| (Kemin) | | | | | | 0 | 153 | 450 | 180 |
| S. Dak. (FCA) | | | | | | 49(R) | 38(R) | 37(R) | 59(R) |
| (Kemin) | | | | | | | | 124 | 243 |
| Tenn. (FCA) | | | | | | | | 0 | 0 |
| (Kemin) | | 0 | 0 | | 0 | | | 479 | 800 |
| Tex. (FCA) | | 7 | 77 | | 13 | | | 0 | 0 |
| (Kemin) | | | | | | | 198 | 360 | 247 |
| Utah (FCA) | | | | | | | 0 | 0 | 0 |
| (Kemin) | | | | | | | | 810 | 2063 |
| Vt. (FCA) | | | | | | | | 0 | 0 |
| (Kemin) | | 0 | 0 | | | | | 282 | 174 |
| Va. (FCA) | | 7 | 32 | | | | | 0 | 0 |
| (Kemin) | | | | | | 0 | | | |
| Wash. (FCA) | | | | | | 13 | | | |
| (Kemin) | | | | | | | 177 | 270 | |
| Wis. (FCA) | | | | | | | 0 | 0 | |

[A7542]

■ The average dollar sale in each state was less here than the average dollar sale in each of the states involved in the *SweeTart* case. However, members of the general public are not customers of these products. There are not many manufacturers of rodenticides. Comparable volume of dollar sales could not be expected. In my opinion plaintiff established sufficient market penetration in Georgia and Florida prior to the registration to entitle it to an injunction prohibiting defendants from competing with it under its "LUR" trademarks in those states. The minimal, declining and/or sporadic sales in the remainder of the states in which FCA had done business before September 22, 1964, are not large enough to include them within its effective market area.

■ If the de minimis principle is applied to the rights of plaintiff to injunctive relief under a common law trademark, in all equity it also should be applied to defendants' sales prior to the trademark registration. States in which its sales are insufficient to make a significant market penetration should not be included among those in which there has been prior use of defendants' mark. The rights of the respective parties in such states should be determined by the rights of the parties after registration.

In this regard, I believe the figures show sufficient market penetration by defendant to constitute prior use under common law in the following states:

| | |
|---|---|
| California | Minnesota |
| Illinois | Missouri |
| Iowa | Nebraska |
| Kansas | Texas |
| Kentucky | Vermont |

With the exception of Georgia and Florida and these states, the respective rights of the parties must be determined under the Lanham Act.

## LANHAM ACT

■ "PESTLUR" is descriptive of the product and was registered under 15 U.S.C. § 1052(f). Such registration constitutes prima facie evidence of ownership and shifts the burden of going forward with the evidence to show that it has not acquired a secondary meaning relating to the source of the product to the "infringer."

■ However, the cases are clear that injunctive relief must be limited to the area in which the descriptive term has acquired a secondary meaning. Bavarian Brewing Company v. Anheuser-Busch, Inc. (S.D.Ohio, 1957), 150 F. Supp. 210; Anheuser-Busch, Inc. v. Bavarian Brewing Company (6th Cir., 1959), 264 F.2d 88, 90; Annot.: Unfair Competition—Secondary Meaning, 41 A.L.R.3rd 434, 442. See: Griesedieck Western Brewery Co. v. Peoples Brewing Co. (8th Cir., 1945), 149 F.2d 1019, 1022–1023.

■ Whether the burden is on FCA or Kemin, the Court finds sales of "PESTLUR" have been so minimal, sporadic, and declining in the states where it has been sold, that it has in fact not acquired a secondary meaning in any of these states and there has not been sufficient penetration into the market of any area to entitle plaintiff to the protection of injunctive relief. As there have been no sales in either Georgia or Florida since 1969, it is questionable whether injunctive relief should even be imposed in these states. However, as it has previously been held a common law trademark for PESTLUR had been established prior to registration, the Court is not inclined to find abandonment at this time.

## PLAINTIFF'S CLAIM OF UNFAIR COMPETITION AND DEFENDANT'S COUNTERCLAIM

■ It is obvious to the Court that the bitter feelings between the parties in this lawsuit resulted from the success of a former employee in invading the former employer's market for animal feed flavorings. This trademark infringement suit and the counterclaims are by-products of this mutual animosity.

Although neither party has conducted itself in an exemplary manner, the Court is of the opinion that plaintiff has failed to sustain its burden of proving its claim of unfair competition and defendants have likewise failed to prove their claim of libel and unfair competition.

The Clerk of Court is Ordered to issue a Writ of Injunction and enter judgment in accordance herewith.