**MINNESOTA PET–BREEDERS, INC., Plaintiff,**

v.

**SCHELL & KAMPETER, INC., d/b/a Diamond Feeds, Defendant.**

No. CV 3–90–277.

United States District Court, D. Minnesota, Third Division.

July 6, 1993.

Eric O. Haugen, Haugen & Nikolai, Charles A. Cox, Cox & Goudy, Minneapolis, MN, for plaintiff.

Lionel L. Lucchesi and Michael Kovac, Polster, Lieder, Woodruff & Lucchesi, St. Louis, MO and Thomas J. Stueber and David R. Fairbairn, Kinney & Lange, Minneapolis, MN, for defendant.

**Memorandum Opinion and Order**

KYLE, District Judge.

### Introduction

Before the Court is defendant Schell & Kampeter, Inc.'s (d/b/a and hereinafter "Dia-

mond Feeds") Motion for Partial Summary Judgment with respect to the relief sought by plaintiff Minnesota Pet–Breeders, Inc. ("Pet–Breeders"). Pet–Breeders has asserted various trademark infringement and unfair competition claims against Diamond Feeds in connection with the production and sale of dog food.

## Background

This trademark infringement and unfair competition action has come before the Court on prior occasions and the general facts are contained in this Court's Memorandum Opinion and Order, filed September 25, 1992. This section will set forth only those additional facts which are relevant to the present motion.

Based on Diamond Feeds' (a) alleged infringement of Pet–Breeder's trademark "PRO–DIET" and (b) attempt to trade off the goodwill associated with "PRO–DIET" by engaging in a slow transition from the use of "ProDiet"[1] to "Professional" and "Professional Diet," the Amended Complaint asserts four causes of action: federal trademark infringement (Count I); common law unfair competition and infringement (Count II); false designation of origin under federal trademark law (Count III); and violations of the Minnesota Deceptive Trade Practices Act (Count IV). Pet–Breeders claims damage to its business, reputation and goodwill from the loss of sales and profits; it seeks injunctive relief, destruction of Diamond Feeds' trademarked packages, an accounting of profits, monetary damages, treble, punitive and exemplary damages, and attorneys' fees and costs.

During the course of litigation, Pet–Breeders limited the extent of some its requested relief and clarified the nature of its trademark claims. It has limited the request for an accounting of profits and damages to the years 1987, 1988, 1989 and 1990, and has further stated that it "was not making a

claim for defendant's use of Professional Diet after 1990 [and was] no[t] making any claim for 'Professional.'" Defendant's Exh. F, letter from attorney Charles A. Cox, December 16, 1992. Pet–Breeders admitted that "[t]here is no question that if [Diamond Feeds] had used Professional Diet without prior misappropriation of Pro–Diet there would be no basis for a claim." Defendant's Exh. C, Pet–Breeders' Memorandum in Opposition to Defendant's Second Motion for Summary Judgment, p. 13.

Uncontradicted evidence submitted in connection with this motion shows that, although there may have been sales of relatively minor dollar amounts in several other states, Pet–Breeders' primary sales of its "PRO–DIET" products occurred in Minnesota, North Dakota and South Dakota. Defendant's Exh. G, Stanley Crume Depo., pp. 44–45; Defendant's Exh. H., Pet–Breeders' Response to Second Request for Admissions, No. 16, CV 3–92–678. Such evidence also shows that Diamond Feeds sold products marked with "DIAMOND Professional Diet" in Minnesota in 1988, 1989 and 1990, but did not sell its other product lines, "NUTRA–NUGGETS ProDiet" and "NUTRA–NUGGETS Professional Diet," in Minnesota, North Dakota or South Dakota between 1987 and 1990. As Pet–Breeders' claims do not include the use of "DIAMOND Professional Diet" (Defendant's Exh. D, Pet–Breeders' Objections to Defendant's Trial Exhibits), its claims of infringement cover only the use of "NUTRA–NUGGETS Professional" and "NUTRA–NUGGETS Professional Diet," neither of which was used in Pet–Breeders' primary market area.

*Position of the Parties*

a. Diamond Feeds' motion addresses only the *remedies* Pet–Breeders seeks.[2] For the purposes of the motion, it is assumed that Pet–Breeders can prove the elements of its

---

1. Pet–Breeders uses capital letters with a dash in between the two words as this best replicates the appearance of the trademark on its packages, while Diamond Feeds uses lower case letters and spells the mark as one word on its pet food packages. The Court will refer to the mark as each party does when referring to the respective party's use of the mark.

2. This Court denied Diamond Feeds' motion for summary judgment as to the alleged trademark infringement and unfair competition in its Order filed September 25, 1992. *Cf. Web Printing Controls Co., Inc. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir.1990) (discussing "two stages of inquiry—violation of the law [and] remedies for the violation—that should be kept separate.").

trademark and unfair competition claims; notwithstanding, Diamond Feeds contends that Pet–Breeders is not entitled to the injunctive and monetary relief it seeks. Diamond Feeds asserts the following: 1) the lack of competition in the same geographic market eliminates the possibility of consumer confusion between two trademarked products, which in turn would preclude an accounting of profits for such infringement; 2) Pet–Breeders has not established that it suffered any lost sales or profits from Diamond Feeds' alleged infringement which, in turn, would preclude an award of monetary damages; 3) Pet–Breeders is not entitled to an injunction because a) Diamond Feeds has voluntarily ceased using the "ProDiet" mark,[3] and b) Pet–Breeders has not demonstrated a "likelihood of entry" into Diamond Feeds' trade area; 4) punitive damages are not available under the Lanham Act; 5) Pet–Breeders is not entitled to attorneys' fees on the facts of this case; and 6) monetary damages are not available under the Minnesota Deceptive Trade Practices Act.

b. In response, Pet Breeders asserts the following: 1) its claims of infringement rest not only on the *sale* of Diamond Feeds' products affixed with the infringing mark, but also on Diamond Feeds' continued advertising and UPC designation of the "PRO-DIET" mark; that there may have been no direct competition in the same geographic market is irrelevant to the issue of infringement; 2) it is entitled to an accounting of profits for Diamond Feed's intentional and bad faith infringement, regardless of whether it suffered actual losses; 3) injunctive relief is warranted because Diamond Feeds has not ceased all infringing uses and this is a case of "reverse confusion" which hinders its ability to expand its trade area; and 4) it is entitled to attorneys' fees under both the Lanham Act and the Minnesota Deceptive Trade Practices Act because this is an "exceptional" case of knowing and willful trademark infringement. Pet–Breeders concedes that punitive damages are not available under the Lanham Act, but asserts that they are available under Minnesota law where a defendant has acted with deliberate disregard of, or willful indifference to, the rights of the plaintiff.

## Discussion

### I. SUMMARY JUDGMENT STANDARD

The moving party is not entitled to summary judgment unless the movant can show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The role of the court is not to weigh the evidence but instead to determine whether, as a matter of law, a genuine issue of material fact exists. *Agristor Leasing v. Farrow,* 826 F.2d 732, 733 (8th Cir.1987). "In making this determination, the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the facts." *Id.* at 734.

"To withstand a motion for summary judgment, a party need not prove in its favor an issue of material fact; all that is required is sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." *Unigroup v. O'Rourke Storage & Transfer,* 980 F.2d 1217, 1220 (8th Cir.1992) (citations omitted). The non-moving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue of material fact for trial. *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Summary judgment must be entered against a party

---

**3.** Diamond Feeds has offered to stipulate to a permanent injunction against the use of the mark.

who fails to make a showing sufficient to establish the existence of an element *essential* to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

## II. REMEDIES FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Under the Lanham Act, a prevailing plaintiff is entitled,

> subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute just compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). "[T]he district court is given broad discretion to award the monetary relief necessary to serve the interests of justice, provided it does not award such relief as a penalty." *Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 715 (8th Cir.1980). *See also Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir.1985) ("[T]he monetary relief granted by the district court must be great enough to further the statute's goal of discouraging trademark infringement, but must not be so large as to constitute a penalty."). In addition, the court may grant an injunction, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right" held by the owner of the registered trademark. 15 U.S.C. § 1116(a). "All relief under the Lanham Act is subject to equitable principles." *Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc.*, 602 F.Supp. 191, 199 (S.D.Iowa), *aff'd sub nom Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc.*, 775 F.2d 260 (8th Cir.1985).

Pet–Breeders seeks all available forms of relief, as well as punitive and exemplary damages. The Court makes the distinction, present in the Lanham Act, between "defendant's profits" and "any damages sustained by the plaintiff." 15 U.S.C. 1117(a). In this Memorandum Opinion and Order, Pet–Breeders' request for an *accounting of profits* will be considered a request for an *accounting of Diamond Feeds' profits derived from the use of the allegedly infringing trademark*; Pet–Breeder's request for *damages* will be considered as a request for *actual damages Pet–Breeders may have suffered due to Diamond Feeds' use of the trademark*. *See* 2 J. Thomas McCarthy, McCarthy on Trademark Infringement and Unfair Competition § 30.24[1] (3d ed. 1992) [hereinafter "McCarthy"] (discussing the "semantic confusion in the opinions dealing with the award of monetary recovery for trademark infringement and unfair competition.").

The Court will address Pet–Breeders' entitlement to each form of relief in turn although some of the elements overlap.

### A. *Injunctive Relief*

Under both the common law of unfair competition and federal trademark law, the court has the authority to grant an injunction to remedy infringement of a trademark. *See* 15 U.S.C. § 1116; Restatement (Third) of Unfair Competition § 35, comment b (Tentative Draft No. 3, 1991) ("In cases of deceptive marketing, trademark infringement, or trademark dilution, a prevailing plaintiff is ordinarily awarded injunctive relief to protect both the plaintiff and the public from the likelihood of future harm."). A plaintiff need not prove actual damage or injury to obtain an injunction; it need only establish a likelihood of confusion among con-

sumers. *Mutual of Omaha Ins. Co. v. No-vak,* 836 F.2d 397, 403 n. 11 (8th Cir.1987).

■ If the defendant has voluntarily ceased using the infringing trademark and there is little or no possibility of recurring use, the need for the injunction may be mooted. *See Schutt Mfg. Co. v. Ridell, Inc.,* 673 F.2d 202, 207 (7th Cir.1982). However, if there is a substantial possibility that the defendant will recommence the infringing use, or has not, in fact, discontinued all such use, the court may, in its discretion, grant an injunction. *See Heaton Distributing Co. v. Union Tank Car Co.,* 387 F.2d 477 (8th Cir.1967); *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 649 (3rd Cir.1958).[4]

■ There remains a genuine issue of material fact as to whether Diamond Feeds has ceased *all* uses of "ProDiet"; Pet–Breeders has asserted that some "uses," such as the UPC designation of the products, continue. Although it is not clear whether such uses, absent actual package labels displaying the "ProDiet" mark, will support a finding of likelihood of confusion sufficient to establish infringement, the Court cannot conclude, on the record presented, that all use by Dia-

mond Feeds has ceased or that Diamond Feeds has no intention of recommencing use of the allegedly infringing mark. Moreover, there are genuine issues of material fact regarding the likelihood of confusion resulting from use of the two marks and any resulting infringement (*see* Memorandum Opinion and Order, September 25, 1992, denying Diamond Feeds' Motion for Summary Judgment on this ground), rendering any determination as to Pet–Breeders' entitlement to an injunction premature.[5] Therefore, Diamond Feeds' motion for summary judgment with respect to injunctive relief will be denied.[6]

## B. *Accounting of Profits*

An accounting of defendant's profits derived from use of the infringing trademark is one method of recovery for a prevailing plaintiff. 15 U.S.C. § 1117(a). A number of courts have held that an accounting of defendant's profits in cases of trademark infringement or unfair competition is warranted if (1) the plaintiff sustained damage from the infringement, (2) the infringer is unjustly enriched, and (3) necessary to deter a willful infringer from doing so again.[7] At least one

---

**4.** In addition to an injunction prohibiting Diamond Feeds from using "PRO–DIET" or any similar mark, Pet–Breeders also requests that the Court order, pursuant to 15 U.S.C. § 1118, the destruction of all labels, signs, prints, packages, advertisements, etc. in Diamond Feeds' possession. The scope of an injunction is within the discretion of the court (15 U.S.C. § 1116 (courts may grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable....").

**5.** The parties also disagree as to whether Pet–Breeders is entitled, as the senior user of the registered trademark, to an injunction in areas where it may not have current sales, but into which it may likely or naturally expand. *See, e.g., Comidas Exquisitos, Inc. v. O'Malley and McGee's, Inc.,* 775 F.2d 260 (8th Cir.1985); *Dawn Donut Co. v. Harts Food Store, Inc.,* 267 F.2d 358 (2d Cir.1959). Pet–Breeders argues that analysis of its zone of natural expansion is not possible because this is a case of "reverse confusion" in which a large junior user saturates the smaller senior user's market, thus confusing customers as to the senior user's association with the junior user and effectively precluding the junior user from expanding. *See, e.g., Sands, Taylor & Woods v. Quaker Oats Co.,* 978 F.2d 947 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993).

Pet–Breeders has presented no evidence of the type of "saturation" necessary to establish a case of "reverse confusion"; the Court finds it unnecessary to address this issue as Diamond Feeds' motion will be denied for the reasons set forth above.

**6.** The Court notes that Diamond Feeds has renewed its offer to stipulate to a permanent injunction. Diamond Feeds' Reply Memorandum, p. 6. Fashioning any injunction is within the court's, not the jury's, province, and the Court urges the parties to consider the submission of an agreed-upon form of injunction. Should Pet–Breeders prevail at trial, the Court would, in all likelihood, enjoin Diamond Feeds from using "PRO–DIET." Should Diamond Feeds prevail at trial, the Court would not likely enjoin such use. If however, the parties stipulate to a permanent injunction regarding the use of "PRO–DIET" prior to trial, the injunction could remain in force even if Pet–Breeders does *not* prevail on the merits.

**7.** *See Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1405 (9th Cir.1993); *George Basch Co., Inc. v. Blue Coral, Inc.,* 968 F.2d 1532, 1537–40 (2d Cir.1992); *Nalpac Ltd. v. Corning Glass Works,* 784 F.2d 752, 755 (6th Cir.1986); *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656 (2d

court has held that "deterrence alone cannot justify such an award [of infringing defendant's profits]."[8] Many courts follow the holding in *Champion Spark Plug v. Sanders,* 331 U.S. 125, 130–31, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947), that an accounting is appropriate only when fraud or palming off is present, and will grant an accounting of defendant's profits only if the defendant acted in bad faith.[9]

The parties disagree as to the position of the Eighth Circuit with respect to a prevailing plaintiff's[10] entitlement to an accounting of defendant's profits. In *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976), the Eighth Circuit adopted the holding in *W.E. Bassett Company v. Revlon,* 435 F.2d 656 (2d Cir. 1970) to the extent that

> [i]t is essential to deter companies from willfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark. (Citations omitted; emphasis in original).

*Fruehauf,* 536 F.2d at 1222 (quoting *W.E. Bassett,* 435 F.2d at 664). The Eighth Circuit did not express any opinion with respect to entitlement to an accounting of defendant's profits based on unjust enrichment or the necessity of a finding of bad faith before awarding the defendant's profits. However, in increasing the award from 20% to 100% of defendant's profits from sales in the market area, the Court did speak in terms of equity ("*equity* requires that [defendant] relinquish all of its profits...." (emphasis added)— *Fruehauf,* 536 F.2d at 1222) and also affirmed the lower court's finding that the defendant's conduct was willful and in bad faith. *Id.* at 1223.

■ *Fruehauf* appears to place the Eighth Circuit with the majority view that an accounting of defendant's profits is appropriate if (1) the plaintiff sustained damage from the infringement, (2) the infringer was unjustly enriched, or (3) necessary to deter a willful infringer from doing so again. This Court concludes that the Eighth Circuit would require a finding that the defendant had committed the infringement in bad faith before awarding defendant's profits. *See Fruehauf,* 536 F.2d at 1223. *See also George Basch Co.,* 968 F.2d at 1537–40 (addressing question of whether willfulness or intentional misconduct was a necessary element in order to award an accounting of defendant's profits under the theories of unjust enrichment, deterrence, or when the plaintiff sustains damages, and concluding that "a finding of willful deceptiveness is necessary in order to war-

Cir.1970); *Maier Brewing Co. v. Fleischman Distillery Corp.,* 390 F.2d 117, 123 (9th Cir.), *cert. denied,* 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968); *Frisch's Restaurant, Inc. v. Elby's Big Boy,* 661 F.Supp. 971, 989 (S.D.Ohio 1987).

**8.** *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 969 (D.C.Cir.1990).

**9.** *See, e.g., George Basch Co.,* 968 F.2d at 1537 ("a finding of defendant's willful deceptiveness is a prerequisite for awarding profits."); *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684, 695–96 (5th Cir.) (affirming district court's refusal to award defendant's profits under an unjust enrichment theory where there was no evidence of "palming off" or trading off of plaintiff's goodwill as such an award "would be far from equitable—it would be a windfall."), *motion for rehearing en banc denied,* 966 F.2d 956 (5th Cir.1992); *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena,* 433 F.2d 686, 707 (2d Cir.1970) (for an accounting, a plaintiff must show "not only that the infringer infringed, but that he did so with the deliberate intent to cause confusion,

mistake or to deceive purchasers; in other words, to purposely palm off the infringer's goods as those of the infringed."), *cert. denied,* 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). *But see Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 941 (7th Cir.1989) ("Other than general equitable considerations, there is no express requirement that the parties be in direct competition or that the infringer willfully infringe the trade [mark] to justify an award of profits."); *Burger King Corp. v. Mason,* 855 F.2d 779, 781 (11th Cir.1988) ("Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark.")

**10.** While an award of profits could be granted in favor of a defendant on a counterclaim of infringement, the award is usually granted in favor of the plaintiff who has instituted the action alleging infringement by the defendant.

rant an accounting for profits.").[11]

This Court also concludes that *Fruehauf* limits any award of profits under the theories of unjust enrichment, deterrence or sustained damages (compensation) to those profits resulting from sales in "the geographical area of [plaintiff's] actual product market penetration." *Id.* at 1221. In establishing this limitation, the Eighth Circuit quoted with approval from *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 939 (8th Cir.1967) (*Sweetarts I*):

> Though the market penetration need not be large to entitle plaintiff to protection, it must be significant enough to pose the real likelihood of confusion among the consumers in that area between the product of plaintiff and the products of defendants. (Citations omitted).

*Id.*

In *Sweetarts I*, the Court of Appeals set out four, non-exclusive factors which are relevant to a determination of a plaintiff's "effective market area": 1) plaintiff's dollar value of sales at the time defendant entered the market; 2) number of customers compared to the population of the state; 3) relative and potential growth of sales; and 4) length of time since significant sales. *Sweetarts I*, 380 F.2d at 929 (citations omitted). The Court also held that sales "so small, sporadic and inconsequential that present and anticipated market penetration is de minimis" cannot constitute "market penetration." *Id.*

In a subsequent proceeding before the Court of Appeals in which the Court limited plaintiff's market area to the three states where plaintiff made 95% of all sales, the Court quoted from *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415–416, 36 S.Ct. 357, 361, 60 L.Ed. 713 (1915):

> That property in a trademark is not limited in its enjoyment by territorial bounds, but may be asserted and protected wherever the law affords a remedy for wrongs, is true in a limited sense. Into whatever markets the use of a trademark has extended, or its meaning has become known, there will the manufacturer or trader whose trade is pirated by an infringing use be entitled to protection and redress. But this is not to say that the proprietor of a trademark, good in the markets where it has been employed, can monopolize markets that his trade has never reached, and where the mark signifies not his goods, but those of another.... But the mark, of itself, cannot travel to markets where there is no article to wear the badge and no trader to offer the article.

*Sweetarts v. Sunline, Inc.*, 436 F.2d 705, 710–11 (8th Cir.1971) (*Sweetarts II*).

The trademark at issue in *Fruehauf* was unregistered; therefore, the owner had to establish secondary meaning in a given market in order to claim entitlement to common law trademark protection. *Fruehauf*, 536 F.2d at 1220–21. As the mark "PRO–DIET" is registered with the Patent and Trademark Office, Pet–Breeders asserts that "secondary meaning has nothing to do with this case." Plaintiff's Memorandum in Opposition, p. 4. *But see* Amended Complaint, ¶ 12 ("As a result of such sales and advertising by plaintiff, the mark has obtained secondary meaning."). To the extent that Pet–Breeders need not establish that its descriptive, non-inherently distinct mark has acquired secondary meaning in its market area, Pet–Breeders is correct.

■ However, this Court concludes that in this Circuit, a plaintiff owning a registered mark is not entitled to relief without some showing of likelihood of injury. For instance, in *Flavor Corporation of America v. Kemin Industries, Inc.*, 358 F.Supp. 1114, 1125 (S.D.Iowa 1973), *aff'd*, 493 F.2d 275 (8th Cir.1974), the plaintiff was not entitled to an injunction against defendant's use of plaintiff's registered mark absent a likelihood of entry into defendant's market area and the

---

11. However, in *George Basch Co.*, the Second Circuit Court of Appeals went on to note that while such a finding is necessary, it may not be sufficient. The Court enumerated five factors which may be considered in awarding defendant's profits: (1) the degree of certainty that the defendant benefitted from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands. *George Basch Co.*, 968 F.2d at 1540.

subsequent acquisition of secondary meaning. *See also Anheuser–Busch, Inc. v. Bavarian Brewing Co.,* 264 F.2d 88, 90 (6th Cir.1959). The plaintiff is entitled to an injunction on the showing of a *likelihood* of confusion, but in order to recover monetary damages, a plaintiff must show *actual confusion. See Mutual of Omaha,* 836 F.2d at 403. The requirement that plaintiff suffer a cognizable injury before recovering a monetary award is consistent with section 1117(a)'s requirement that monetary relief be compensatory, not punitive.

Furthermore, although the Eighth Circuit adopted the deterrent theory espoused in *W.E. Bassett (Fruehauf* at 1222), the Court expressly stated that it "[did] not read [*W.E. Bassett* ] as authority for the proposition that all of the infringer's profits should be recovered in *every* case. . . ." *Fruehauf,* 536 F.2d at 1222–23. In *Fruehauf,* the Court found that the defendant had acted in bad faith in copying the plaintiff's mark, and that the necessary deterrent for such behavior was the disgorging of all of defendant's profits in those geographic areas where there was a likelihood of confusion due to plaintiff's market penetration.

▮ In the instant case, Pet–Breeders owns a registered mark, but sales of products with the trademark were limited to three states. Pet–Breeders has not demonstrated a likelihood of entry into other markets in which the sale of Diamond Feeds' trademarked products would cause a likelihood of confusion. Thus, even though the mark "PRO–DIET" was registered, the mere fact of registration (for which the existence of secondary meaning for a descriptive mark is a prerequisite) does not give Pet–Breeders any more rights with respect to recovery of monetary damages in those areas where no likelihood of confusion exists than it would have under common law. *See Flavor Corp. of America,* 493 F.2d at 282 ("Secondary meaning is a common law concept and the protection afforded a distinctive mark under the Lanham Act is substantially identical to that provided by the common law. At common law, a trademark was only entitled to injunctive protection in those market areas in which the mark had acquired a secondary meaning."). Therefore, Pet–Breeders' argument that *Fruehauf* is not relevant to this case because it involved secondary meaning is misplaced.

Under *Fruehauf* and *Sweetarts I* and *II,* a prevailing plaintiff is entitled to an accounting of defendant's profits made in connection with sales of products containing the infringing mark to the extent that such sales are within the plaintiff's market area. *See also Blue Ribbon Feed Co. v. Farmers Union Cent. Exchange, Inc.,* 731 F.2d 415, 421–22 (7th Cir.1984) (court limited profits to defendant's sales within a twenty-mile trade area of plaintiff). In light of the fact that monetary recovery under the Lanham Act must be compensatory, not punitive (15 U.S.C. § 1117(a)), and that any award of profits, damages or attorneys' fees is "subject to the principles of equity" (*id.*), the Court concludes that the Eighth Circuit limitation on accounting of profits is consistent with the purposes of the Act.

Pet–Breeders has accepted Diamond Feeds' assertions as to the amount of Pet–Breeders' sales from 1987 to 1990. In addition, it has not contested Diamond Feeds' summary of its own sales in Minnesota, North Dakota and South Dakota from 1987 to 1990. Thus, it is undisputed that only one line of Diamond Feeds' products was sold in Pet–Breeders' market area during the relevant time period—"DIAMOND Professional Diet." Pet–Breeders has stated that its claims of infringement do not include "DIAMOND Professional Diet," and therefore, Diamond Feeds' use of the name "DIAMOND Professional Diet" in Minnesota cannot be a source of infringement of Pet–Breeders' mark "PRO–DIET"; nor can such use form the basis of *any* monetary recovery (whether by way of an accounting of profits or for actual damages).

Unlike "DIAMOND Professional Diet," Diamond Feeds' "NUTRA–NUGGETS Pro-Diet" and "NUTRA–NUGGETS Professional Diet" trademarks were *not* used in connection with sales in Minnesota, North Dakota and South Dakota between 1987 and 1990, but rather were used in 11 to 17 *other* states. Defendant's Exh. B., Schell Aff., ¶¶ 2, 7 and 8. Pet–Breeders' entitlement to an account-

ing of Diamond Feeds' profits from such sales is dependent upon a showing that these states were included in "the geographical area of [its] actual product market penetration." *Fruehauf,* 536 F.2d at 1221. Pet–Breeders has made no showing that it had more than de minimis sales in states outside of Minnesota, North Dakota and South Dakota. Pet–Breeders' Memorandum re: Direct Competition, pp. 10–11.[12]

Pet–Breeders concedes that there is no direct competition, in the form of sales in the same states, between its "PRO–DIET" products and Diamond Feeds' "NUTRA–NUGGETS ProDiet" and NUTRA–NUGGETS Professional Diet" products. Pet–Breeders also agrees that the compensation theory of awarding profits (when plaintiff sustains actual damages) "usually involves direct competition between the two parties." Plaintiff's Memorandum in Opposition, p. 3. However, Pet–Breeders contends that the absence of direct competition does not preclude it from an award of Diamond Feeds' profits under the unjust enrichment or deterrence theories which do not require showings of actual damages. *See Roulo v. Russ Berrie & Co., Inc.,* 886 F.2d 931, 941 (7th Cir.1989) (court awarded defendant's profits under unjust enrichment or deterrence theory even though plaintiff's actual damages may have been less.).

■ Under a theory of unjust enrichment, Pet–Breeders is entitled to an award of Diamond Feeds' profits "when [it] can show that, were it not for [Diamond Feeds'] infringement, [Diamond Feeds' sales] would otherwise have gone to [Pet–Breeders]". *W.E. Bassett,* 435 F.2d at 772. Without sales in the same area, it is difficult, if not impossible, to prove that Diamond Feeds wrongfully diverted sales which would otherwise have gone to Pet–Breeders. The sales of "NU-

TRA–NUGGETS ProDiet" and "NUTRA–NUGGETS Professional Diet" in areas outside of Minnesota, North Dakota and South Dakota were to customers who were not exposed to Pet–Breeders' "PRO–DIET" products—they would not have had the opportunity to buy "PRO–DIET" dog food even if there had been no alleged infringement by Diamond Feeds. The holding in *Fruehauf* makes explicit the principle that sales in the same market area are necessary to establish that whatever "enrichment" the infringer gains is "unjust" in the sense that actual customers would have bought the plaintiff's products were it not for the infringement. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 206, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1941) ("The plaintiff, of course, is not entitled to profits demonstrably not attributable to the unlawful use of his mark."). *See also Comidas Exquisitos,* 602 F.Supp. at 199 (court did not award defendant's profits when no showing that any of defendant's profit was in any way attributable to defendant's use of plaintiff's service mark).

■ An award of profits under the deterrence theory "is not compensatory in nature, but rather seeks to protect the public at large.... [by] promot[ing] the secondary effect of deterring public fraud regarding the source and quality of consumer goods and services." *George Basch Co.,* 968 F.2d at 1539. As a matter of logic, deterrence is only effective if the infringer has acted willfully and in bad faith; that is, an innocent infringer cannot be "deterred" from actions which were taken in good faith and without the intent to deceive. If the Court assumes, for purposes of this motion, that Diamond Feeds has acted in bad faith by willfully infringing Pet–Breeders' trademark, recovery under the deterrence theory might be

---

12. Although Pet–Breeders *did not submit any evidence* in support of the *assertions* regarding its sales, the Court will accept those assertions as true for the purposes of this Order. However, these sales figures and marketing plans do not support a finding of "market penetration" beyond Minnesota, North Dakota and South Dakota in the years between 1987 and 1990. Pet–Breeders asserts that between 1981 and 1990, it had sales of "at least $1,000" in Florida, Wisconsin and Iowa, as well as selling samples in nine

other states and Japan. Pet–Breeders also asserts that it worked with several consultants on a national marketing plan and made preliminary contact with businesses in Canada, Indiana and elsewhere. However, marketing plans, sample sales and sales of approximately $1,000 do not constitute "market penetration" for the purposes of defining the area from which a plaintiff is entitled to recover a defendant's profits made in connection with trademark infringement. *See Sweetarts II,* 436 F.2d at 708–09.

appropriate. However, the *Fruehauf* decision limits the scope of such recovery to areas where the plaintiff has achieved "market penetration." *Fruehauf*, 536 F.2d at 1221–22. Such a limitation prevents the plaintiff from gaining a windfall in the form of nationwide profits of a defendant when the plaintiff's product is only available in a small area. To use the deterrence theory to "teach the infringer a lesson" by awarding nationwide profits would be the equivalent of awarding punitive damages; monetary awards under the Lanham Act must be compensatory, not punitive. 15 U.S.C. § 1117(a). The geographic limitation on the award of defendant's profits balances the need "to make violations of the Lanham Act unprofitable to the infringing party" (*Otis Clapp & Son*, 754 F.2d at 744) without making the monetary award punitive. As Diamond Feeds' has not sold its allegedly infringing products in Pet–Breeders' area of "market penetration," there are no profits which can be disgorged to Pet–Breeders without giving Pet–Breeders a tremendous windfall.[13]

For the foregoing reasons, Pet–Breeders is not entitled to such an award, and Diamond Feeds' motion for summary judgment with respect to the request for an accounting of profits will be granted.

## C. *Actual Damages*

Although Pet–Breeders' Complaint contains claims for actual damages (as well as treble and exemplary damages), Pet–Breeders appears to have relinquished these claims to the extent they are based on lost profits. Pet–Breeders' principal, Stanley Crume, testified that he is unaware of any lost profits his company may have suffered, due to allegedly diverted sales or otherwise. *See* Crume Depo., pp. 126–29.[14]

 While Stanley Crume's broad concession that he is unaware of any "loss" Pet–Breeders may have suffered could be read to include *any* business injury, including loss due to damage to the business' goodwill, the Court believes that this would be an overly narrow interpretation. "Damages" which a plaintiff may sustain due to trademark infringement and unfair competition may include loss of goodwill to the business, as well as diverted sales resulting from consumer confusion. *See generally*, McCarthy,

---

**13.** The Court notes that the Second Circuit Court of Appeals has questioned the appropriateness of the deterrence theory as the basis for an award of profits as it "is too weak and too easily invoked a justification for the severe and often cumbersome remedy of a profits award." *ALPO Petfoods*, 913 F.2d at 969.

**14.** The transcript of this part of the deposition reads:

Question: Has your company, to your knowledge, or do you have any information how your company suffered any loss by the use of Pro–Diet by Diamond Feeds?
Answer: That means in the past?
Question: Yes, sir.
Answer: No, I do not.
 * * * * * *
Question: ....Has any one of them ever told you of any loss that your company as suffered?
Answer: Well, I don't recall right at the moment, but I can't remember everything at one time.
Question: ....Prior to the time of filing the lawsuit, were your aware of any?
Answer: No.
 * * * * * *
Question: You don't recall any loss that your company has suffered, is that correct?
Answer: Not at this time.

Question: Prior to filing the lawsuit, was there any loss that your company suffered that you were aware?
Answer: Not that I am aware of right now.
Question: Anybody else in your company have any knowledge or information?
Answer: I do not know.
Question: Did you forget, Mr. Crume, or did you just never have the information? When you say you don't know, did you have the information at one time?
Answer: I just don't know.
Defendant's Exh. K, Stanley Crume Deposition, pp. 126–28.
Mr. Crume submitted a correction sheet in which he changed his answer to the first question quoted above, stating the reason for the change as "Misunderstood scope of question." His correction reads:
Our ongoing negotiations with Corrientes Trading Company of Japan came to an abrupt halt when they learned of the presence of Diamond Feeds' Pro Diet on the Japanese market. Also, Diamond Feeds has left a lot of customers, dealers and distributors disappointed with its ProDiet Dog Food. It will be difficult for us to introduce our Pro–Diet into areas where the public already associates the name with inferior products and poor customer service.
Deposition Correction Sheet, p. 2.

§ 30.27. Such damages may be appropriate if the plaintiff can prove "either actual consumer confusion or deception resulting from the violation or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *George Basch Co.*, 968 F.2d at 1537 (citations omitted). The touchstone of proof of loss of goodwill damages is consumer confusion—if *consumers* are not *confused* about the identity, source, association or expectation of quality with respect to the two marks, the complaining party cannot be said to have suffered compensable loss of any goodwill or reputation.[15] *See* McCarthy, § 23.01[4][e] (" 'Confusion' means more than that the junior user's mark merely 'calls to mind' the senior user's mark.").

Pet–Breeders has asserted that there are incidents of confusion among consumers, and describes two such incidents. One involved a pet food dealer who, when questioned about a package of Diamond Feeds' "ProDiet" dog food, mistakenly called Pet–Breeders for information after consulting a national buying guide in which both companies were listed. Pet–Breeders' Memorandum re: Direct Competition, p. 11. The other involved a Japanese broker who, after becoming aware of Diamond Feeds' sale of "ProDiet" products in Japan, asked Pet–Breeders if Diamond Feeds was affiliated with it. *Id.* Pet–Breeders alleges that Diamond Feeds has registered its mark "ProDiet" with state agricultural departments and listed the mark in national buying guides.[16] Pet–Breeders contends that Diamond Feeds' failure to change the UPC designation for "Professional" and "Professional Diet" products causes confusion among consumers. As Pet–Breeders concedes that it is unaware of any lost prof-

its, any injury suffered due to such confusion must relate to loss of its goodwill or consumer loyalty.

■ While such incidents and "uses" may have caused consumers to be confused or misled, it is not clear that such confusion related to or caused a loss to Pet–Breeders' goodwill. For instance, state registration officials are not in the business of purchasing the products registered; nor was the retailer in Colorado a "consumer" for purposes of the alleged trademark infringement. The fact that the UPC designations are identical does not automatically create confusion on the part of consumers unless it can be shown that consumers identify a brand by its UPC symbol as opposed to the label on the package. In addition, it is not clear from the record whether Diamond Feeds or the retailer selling the pet food is responsible for creating either the UPC designation or the shelf tag.[17] Mr. Crume asserts that it would be difficult for Pet–Breeders "to introduce [its] Pro–Diet in areas where the public already associates the name with inferior products and poor customer service." Deposition Correction Sheet, p. 2. However, Pet–Breeders has not come forward with *any* evidence of such "disappointed" customers, dealers or distributors.

■ On the record before it, the Court concludes that Pet–Breeders has failed to come forward with specific facts which establish genuine issues of material fact as to loss of goodwill, a showing for which Pet–Breeders bears the burden of proof. Pet–Breeders has not presented sufficient evidence suggesting that Pet–Breeders lost its goodwill or customer loyalty in any way subject to measurement. It is well-established that an

15. The Court uses "consumer" to mean both purchasers and prospective purchasers at the retail and wholesale level.

16. The example of one of Diamond Feeds' national listings submitted by Pet–Breeders (Exh. A., Memorandum re: Direct Competition) is not dated, so it is not clear whether Diamond Feeds' use of "ProDiet" as noted in the listing is current or whether it dates from the time before Diamond Feeds' switched to "Professional" and

"Professional Diet" after being contacted by Pet–Breeders about the trademark.

17. If the retail grocers are responsible for the UPC designation or the shelf tags, Pet–Breeders has the option of bringing an action against them. *See Camel Hair and Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6 (1st Cir.1986) (retail sellers of mislabeled products enjoined from selling mislabeled products even though retailers did not affix the deceptive labels).

award of damages cannot be speculative.[18] Courts draw a distinction between proof of the *fact* of damage and proof of the *amount* of damage such that recovery is precluded "only where the *fact* of damage is uncertain, i.e., where the damage claimed is not the certain result of the wrong, not where the *amount* of damage alone is uncertain." *Broan Manufacturing Co., Inc. v. Associated Distributors, Inc.,* 923 F.2d 1232, 1235 (6th Cir.1991) (citations omitted). "The plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages" once the existence of damages has been shown. *Otis Clapp & Son,* 754 F.2d at 745 (citations omitted).

Based on the record, the Court is at a loss as to how it could make an award of damages due to loss of goodwill, if Pet–Breeders were to prevail at trial. Not only is there no evidence of the *fact* of damage, Pet–Breeders has failed to present evidence "to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *Grantham and Mann, Inc. v. American Safety Products,* 831 F.2d 596, 602 (6th Cir.1987). Diamond Feeds' motion for summary judgment with respect to actual damages will be granted.

### D. *Punitive Damages*

■ Both parties agree that punitive damages are not available under federal trademark law. 15 U.S.C. § 1117(a) (monetary awards constitute "just compensation and not a penalty"); *Metric & Multistandard Components Corp. v. Metric's, Inc.,* 635 F.2d 710, 715 (8th Cir.1980); *ALPO Petfoods,* 913 F.2d at 970. Any punitive damages are available only under state law. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493 (11th Cir.1990).

■ Under Minnesota law, punitive damages "shall be allowed in a civil action only upon clear and convincing evidence that the acts of the defendant show deliberate disre-

gard for the rights or safety of others." Minn.Stat. § 549.20, subd. 1(a). However, the party claiming punitive damages may do so only by motion to the court. Minn.Stat. § 549.191. Pet–Breeders has failed to so move. As punitive damages are available only under state law, Pet–Breeders must comply with Minn.Stat. § 549.191. Likewise, an allegation of punitive damages is an element of substantive law, and this Court is also bound by state law in this regard. Absent compliance with the Minnesota statute, Pet–Breeders' claims for punitive damages must be dismissed, and Diamond Feeds' motion for summary judgement will be granted to the extent Pet–Breeders seeks punitive damages under Minnesota law.

### E. *Attorneys' Fees*

■ Under the Minnesota Deceptive Trade Practices Act, the court

> may award attorneys' fees to the prevailing party if (1) the party complaining of a deceptive trade practice has brought an action knowing it to be groundless, or (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

Minn.Stat. § 325D.45, subd. 2. The question of whether Diamond Feeds' alleged infringement was willful is a question of fact for the jury. Therefore, the Court cannot grant Diamond Feeds' motion for judgment with respect to Pet–Breeders' claim for attorneys' fees under this state statute.

■ Federal trademark law allows the award of attorneys' fees only in "exceptional cases" and at the court's discretion. 15 U.S.C. § 1117. The Court believes this to be a stricter standard than the willful standard applied under the parallel state statute (*see Tonka Corp. v. Tonk–A–Phone, Inc.,* 805 F.2d 793, 794–95 (8th Cir.1986)) as courts have generally awarded attorneys' fees only when the infringement can be characterized

---

18. *See Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410, 415 (7th Cir.1992) ("[P]eople who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence."). *See also Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 580, 90 L.Ed. 652 (1946) (compensatory damages must rest on "a just and reasonable estimate of the damage based on relevant data."). "Allowance for uncertainty is one thing, and rank speculation another." *Zazu Designs v. L'Oreal, S.A.,* 979 F.2d 499, 506 (7th Cir.1992).

as malicious, fraudulent, deliberate and willful. *See, e.g., Comidas Exquisitos,* 602 F.Supp. at 199; *Frisch's Restaurants,* 849 F.2d 1012, 1017 (6th Cir.1988).

█ In the record presently before it, the Court sees no facts or circumstances which place this case into the "exceptional" category, warranting the award of attorneys' fees under the Lanham Act. Unless the evidence revealed during trial suggests otherwise, the Court will deny any request for attorneys' fees pursuant to the Act.[19]

### Order

Based on the records, files and proceedings herein, **IT IS ORDERED** that

1. Diamond Feeds' Motion for Partial Summary Judgment (Doc. 206) with respect to Pet–Breeders' claims for injunctive relief is **DENIED;**

2. Diamond Feeds' Motion for Partial Summary Judgment with respect to an accounting of profits is **GRANTED;**

3. Diamond Feeds' Motion for Partial Summary Judgment with respect to actual damages is **GRANTED;**

4. Diamond Feeds' Motion for Partial Summary Judgment with respect to Pet–Breeders' claims for punitive damages is **GRANTED;** and

5. Diamond Feeds' Motion for Partial Summary Judgment with and respect to attorneys' fees under Minnesota and federal law is **DENIED.**[20]

---

**19.** *See Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486 (5th Cir.1992) (defendant's continued use of mark after notification by plaintiff was not, without more, "exceptional"). *See also Texas Pig Stands,* 951 F.2d at 967–68 (overturning district court's grant of attorneys' fees despite jury finding of willful infringement because the defendant's actions, while not condoned by the court, did "not approach 'deliberate pirating' or 'egregious conduct.'" (footnote omitted)); *Braun, Inc. v. Dynamics Corp. of America,* 775 F.Supp. 33 (D.Conn.1991) (assessment of attor-

neys' fees not warranted even though jury found willful infringement).

**20.** In addition to the issues which remain for trial as set forth in the above Order, the following claims or counterclaims remain for trial in CV 3–90–277: Counts I, II and III of Diamond Feeds Counterclaim. All of the claims and counterclaims in the related case, CV 3–92–678, remain for trial. The cases have been consolidated for trial.